*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LINDA GILBERT, et al.,

    *Plaintiffs-Appellants,*

    *v.*

    No. 04-1207

JOHN D. FERRY, JR., et al.,

    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 03-60185—Marianne O. Battani, District Judge.

Argued: January 28, 2005

Decided and Filed: March 10, 2005

Before: BOGGS, Chief Judge; KENNEDY and MARTIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Richard L. Steinberg, RICHARD L. STEINBERG, P.C., Detroit, Michigan, for Appellants. Gary P. Gordon, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Richard L. Steinberg, RICHARD L. STEINBERG, P.C., Detroit, Michigan, for Appellants. Margaret A. Nelson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

_____

## OPINION

_____

    KENNEDY, Circuit Judge. The Plaintiffs filed this § 1983 action against four justices of the Michigan Supreme Court, seeking a declaration that the Defendant justices' failure to recuse themselves from two cases pending before the Michigan Supreme Court violated their Fourteenth Amendment due process right to a fair hearing before an impartial tribunal because the justices were biased against them.[1] The district court dismissed the action for lack of subject matter jurisdiction

---

[1]The Plaintiffs also named John Ferry, Jr., the State Court Administrator of Michigan, as a defendant. The Plaintiffs requested an injunction mandating Ferry to remove the two cases at issue from the Michigan Supreme Court's docket and to re-assign them to a special docket to be heard by a panel of Michigan Court of Appeals judges. The district court correctly concluded that Ferry, who is responsible for regulating the Michigan Supreme Court's calender, is absolutely immune from injunctive relief under the judicial immunity doctrine. *Gilbert, et al., v. Ferry, Jr., et al.,* 298 F. Supp. 2d 606, 612 (E.D. Mich. 2003). The Plaintiffs do not appeal this conclusion. Insofar as the Plaintiffs seek a declaration that Ferry violated their due process right to a fair hearing by failing to remove the cases from the Court's

1

on the basis of the *Rooker-Feldman* doctrine, holding that since the Plaintiffs had raised the same due process arguments they now raise in this § 1983 claim in motions for recusal filed against the Defendant justices in state court, which the justices denied, it could not conclude that the Plaintiffs suffered a due process violation without concluding that the justices wrongly decided the motions for recusal. In response, the Plaintiffs argued that the *Rooker-Feldman* doctrine did not apply because they filed this § 1983 claim before the justices denied their motions for recusal. The district court held that, even if the *Rooker-Feldman* doctrine did not bar its exercise of jurisdiction when the Plaintiffs filed this action, it nonetheless would have abstained from entertaining the Plaintiffs' suit on the basis of the *Younger* abstention doctrine. We agree with the conclusions reached by the district court, and AFFIRM.

## BACKGROUND

Plaintiff Fieger, a well-known trial lawyer in Michigan, represented Plaintiffs Gilbert, Graves, and Amedure in civil actions filed in the Michigan state court system. Plaintiff Feiger secured a substantial judgment in favor of Plaintiff Gilbert against DaimlerChrysler Corporation, and, in a separate civil action, secured a substantial judgment in favor of Plaintiffs Graves and Amedure against Warner Brothers Corporation. Both judgments were appealed. In *Gilbert v. DaimlerChrysler Corp.*, 2002 WL 1767672 (Mich. Ct. App. July 30, 2002) (per curiam), the Michigan Court of Appeals affirmed the judgment in Gilbert's favor. DaimlerChrysler then applied for leave to appeal to the Michigan Supreme Court, which was granted by a unanimous Order entered on April 8, 2003. *Gilbert v. DaimlerChrysler Corp.*, 468 Mich. 883 (2003). That order also permitted the Michigan and the United States Chambers of Commerce to file briefs separately as *amicus curiae*. *Id.* On April 16, Gilbert filed a motion for recusal against Justices Corrigan, Taylor, Young, and Markman. In a lengthy brief in support of her motion, Gilbert argued that recusal was necessary because the probability of actual bias on the part of the justices was too high to be constitutionally tolerable. Gilbert identified two sources of potential bias. First, she claimed that the justices had a pecuniary interest in the case because they had received large monetary donations and campaign support from the *amicus curiae*.[2] Second, she asserted, the justices' public discourse revealed a deep-rooted animus toward Plaintiff Fieger.[3] On September 17, 2003, the justices denied Gilbert's motion for recusal.

In the second case, *Graves, et al., v. Warner Bros., et al.,* 253 Mich. App. 486 (2002), the Michigan Court of Appeals reversed a judgment favorable to Plaintiffs Graves and Amedure. The *Graves* plaintiffs then requested leave to appeal to the Michigan Supreme Court, which was denied. Thereafter, Graves and Amedure filed a motion for recusal against the Defendant justices, alleging the same grounds for recusal as were raised in the *Gilbert* motion for recusal. On October 10, 2003, the Defendant justices denied the motion.

---

docket, their position is without merit, as Ferry has no power to remove and re-assign cases, but rather works solely under the supervision and direction of the Michigan Supreme Court.

[2]The Plaintiffs allege that Justices Young, Markman, and Taylor received approximately three million dollars in campaign contributions from one, or more, of their *amicus curiae*. They allege that receipt of these funds, and the expectation of future, similar , campaign contributions, constitutes a direct pecuniary interest in the outcome of Gilbert's case.

[3]For instance, during an address made at the August 2000 GOP State Convention, Justice Robert Young is alleged to have stated: "[W]e support personal accountability. That means that if you're stupid enough to put hot coffee between your legs … and get burned, you don't come to the Michigan Supreme Court for relief. … Geoffrey Fieger, and his trial lawyer cohorts hate this court. There's honor in that."

The Plaintiffs initiated the current action on September 5, 2003, nearly five months after Gilbert filed her motion for recusal, but two weeks before the Defendant justices denied this motion. In support of this § 1983 action for violation of their due process right to a fair hearing before an impartial tribunal, the Plaintiffs raise the same arguments that they raised in their motions for recusal, namely, that the Defendant justices were biased against them because they had a pecuniary interest in the *Gilbert* case because the Michigan Chamber of Commerce, appearing before the justices as an *amicus curiae*, donated millions of dollars to their respective campaigns, and because the justices expressed personal and professional animus toward Mr. Fieger. After oral argument on the parties' respective motions for summary judgment, the district court granted the Defendants' motion to stay discovery. The Plaintiffs filed a motion for reconsideration of that order, which the district court denied. Thereafter, the district court issued an opinion and order granting the Defendants' motion to dismiss. *Gilbert*, 298 F. Supp. 2d 606. This appeal followed.

## ANALYSIS

**I.**     Order Staying Discovery

Before considering whether the district court properly dismissed this action, we must first address the Plaintiffs' complaint concerning the district court's order to stay discovery. The Plaintiffs argue that this order prevented them from developing the facts necessary to establish subject matter jurisdiction. When a defendant challenges a court's actual subject matter jurisdiction, as opposed to the sufficiency of the allegations of subject matter jurisdiction in the complaint, the parties must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). The Plaintiffs, however, fail to explain what evidence relevant to subject matter jurisdiction they were denied from obtaining. Rather, they merely assert that it was an "abuse of discretion for the district court to have forbidden the depositions of key non-party witnesses, whose testimony was critical to a fair resolution of the issues." Nowhere do they inform us as to what witnesses were necessary, how their testimony was critical, or even to what issues they would address. In the portion of their brief in which they argue that the district court erred in failing to grant them declaratory relief, they do complain that, as a result of the limited discovery afforded them, they were unable to uncover the full extent of the amount of "soft-money" the justices' campaigns received, nor the identities of all contributors. This, however, has nothing to do with whether the district court had subject matter jurisdiction.

Here, the Defendants argued that the district court either lacked subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine or was required to abstain from exercising its jurisdiction on the basis of the *Younger* abstention doctrine. Thus, only facts relating to those two issues were relevant for determining the Defendants' motion to dismiss for lack of subject matter jurisdiction. The facts necessary to the former issue dealt with whether the Defendant justices had already decided the same issues presented by the current suit, while the fact necessary to resolve the latter issue dealt with whether there were ongoing state proceedings involving the same legal and factual issues as those presented in this case. The facts relevant to the analysis of these issues were never in dispute.[4]

Not only do the Plaintiffs not articulate any factual issue related to the subject matter jurisdiction issues asserted by the Defendants and considered by the district court on which they were denied an opportunity to secure evidence, the Plaintiffs also had a considerable opportunity

---

[4]The Plaintiffs' complaint filed in this matter alleged that Plaintiff Gilbert had an ongoing appeal pending before the Michigan Supreme Court; that the Defendants were members of that court and in a position to decide the appeal; that they had granted a motion for the Michigan Chamber of Commerce to participate as an *amicus curiae* in that case; and that plaintiff Gilbert had filed a motion for recusal, requesting these Defendants to recuse themselves from hearing the case for the same reasons as set forth in this federal complaint.

to secure and present evidence of jurisdiction.  They were able to secure and present evidence relating to jurisdiction after they filed their complaint, during the time they prepared their response to the Defendants' motion to dismiss, and while they were preparing their motion for summary judgment.  Therefore, we conclude that the district court did not abuse its discretion in ordering a stay of discovery after the filing of the parties' motions for summary judgment.

**II.**     *Rooker-Feldman* Doctrine and *Younger* Abstention

A.     *Rooker-Feldman*

The district court dismissed the Plaintiffs' claim for lack of subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine.  It noted that the Plaintiffs raised the same issues in both their motion for recusal and in their § 1983 claim, namely 1) that the justices had an improper pecuniary interest in the *Gilbert* case because the Michigan Chamber of Commerce had donated millions of dollars to their election campaigns, and 2) that the justices were unable to perform their judicial duties impartially because they had expressed personal and professional animus toward Mr. Fieger. The court concluded, then, that it could not hold that the Plaintiffs had suffered a due process violation on the ground that they would not receive a fair hearing before an impartial tribunal without holding that the Defendant justices wrongly decided the motions for recusal.

We analyze a district court's conclusion that the *Rooker-Feldman* doctrine divested it of subject matter jurisdiction under a de novo standard of review.  *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 491 (6th Cir. 2001).  The *Rooker-Feldman* doctrine prohibits federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc., v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted).  This circuit has held that a "federal claim is 'inextricably intertwined' with a state-court judgment and thus implicates *Rooker-Feldman* when 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'"  *Id*.  *See also Exxon Mobil Corp. v. Saudi Basic Indus.*, 364 F.3d 102, 104 (3d Cir. 2004), *cert. granted*, 125 S. Ct. 310 (Oct. 12, 2004) (No. 03-1696) ("Because Congress has conferred jurisdiction to review a state court's decision only on the Supreme Court, *see* 28 U.S.C. § 1257, lower federal courts lack the power to decide claims in which 'the relief requested . . . requires determining that the state court's decision is wrong or . . . void[ing] the state court's ruling.'" (citations omitted)); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (noting that the *Rooker-Feldman* doctrine is "premised on the rule that . . . only the U.S. Supreme Court has authority to invalidate state civil judgments. . . . The doctrine is widely used by the federal court[s] to prevent end-runs around state judgments.").

The Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply to divest the district court of subject matter jurisdiction here because at the time they filed their complaint in this case (on September 5, 2003) there had been no state judgment or order, and thus nothing that the *Rooker-Feldman* doctrine prohibited the district court from reviewing.[5]  *Dubuc v. Mich. Bd. of Law*

---

[5]The Plaintiffs' argument that a state court's order that is issued after the filing of a federal complaint cannot divest a district court of its jurisdiction on the basis of the *Rooker-Feldman* doctrine was the only argument that they raised in their main brief concerning the application of the *Rooker-Feldman* doctrine.  However, in their reply brief, the Plaintiffs raise two additional arguments as to why the *Rooker-Feldman* doctrine does not divest the district court of its jurisdiction in this case.  First, they repeat an argument presented to the district court, namely, that a denial of a motion to recuse is not a "final" judgment, and therefore, the *Rooker-Feldman* doctrine should not apply.  However, as the district court correctly noted, this court in *Pieper v. American Arbitration Association*, 336 F.3d 458, 462 (6th Cir. 2003), held that the *Rooker-Feldman* doctrine prohibits district courts from reviewing not only final state court judgments on the merits, but also interlocutory orders.  Second, they argue, the *Rooker-Feldman* doctrine should not apply because decisions rendered by biased judges should be considered void.  In essence, the Plaintiffs ask us to carve out an exception to the *Rooker-Feldman* doctrine and permit the district courts to sit in review of state court judgments and orders when

*Examiners*, 342 F.3d 610, 619 (6th Cir. 2003) (noting that the *Rooker-Feldman* doctrine did not apply because no state judgment had been issued regarding the issue the plaintiff raised to the federal district court). By the time the Michigan Supreme Court issued its order denying Plaintiff Gilbert's motion for recusal (on September 17, 2003), the district court was already vested with subject matter jurisdiction, and the Defendant justices' order denying the motions to recuse, the Plaintiffs assert, could not operate to divest the court of the jurisdiction that it already possessed. In support of their position, the Plaintiffs note that with respect to diversity jurisdiction, subsequent conduct by the parties, such as changing one's domicile, cannot divest the court of its jurisdiction. Similarly, the Plaintiffs argue, the Defendants should not be able "by their own unilateral acts" to "escape being bound by the jurisdictional facts as they existed at the time the complaint was filed." However, even if we were to find that the Defendant justices' orders issued subsequent to the filing of the Plaintiffs' complaint did divest the district court of its subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine, it would not be the result of any unilateral acts of the Defendants. Rather, the basis of the dismissal would be the result of a decision on the *Plaintiffs'* own motions for recusal. The inevitable consequence of the Plaintiffs filing motions for recusal, and not withdrawing them after they filed their federal complaint, is that the Defendant justices would decide the motions.

The district court, in response to the Plaintiffs' argument that a state order issued subsequent to the filing of a federal complaint cannot divest a district court of its jurisdiction, made two arguments. First, it noted, the Plaintiffs, on September 4, 2003, specifically requested the district court to enter an emergency restraining order to enjoin the Michigan Supreme Court from taking any further action in the pending case to prevent the triggering of the *Rooker-Feldman* doctrine. Specifically, the Plaintiffs asserted, "If the [Michigan] Supreme Court denies [the motions], any federally protected rights that [the district court] might be able to intervene and safeguard will be lost under the *Rooker-Feldman* doctrine." The district court further noted that the Plaintiffs' fears were realized shortly thereafter when the Michigan Supreme Court ruled on Plaintiff Gilbert's motion for recusal on September 17, 2003. The district court concluded: "Therefore, taking Plaintiffs' own argument at face value, the *Rooker-Feldman* doctrine divested the Court of subject matter jurisdiction once the Michigan Supreme Court denied the motions." We would not conclude, however, simply because the Plaintiffs expressed concern that the *Rooker-Feldman* doctrine might apply to divest the district court of its jurisdiction once the motions to recuse were decided, that the Plaintiffs were therefore either bound by that opinion or waived their right to argue that, since the motions to recuse were decided *after* they filed their complaint in federal court, the *Rooker-Feldman* doctrine did not divest the district court of its jurisdiction.

The district court also noted, and we agree, that once the Michigan Supreme Court decided the motions to recuse, this suit became a de facto appeal of those decisions, regardless of when the Plaintiffs filed the present action. Plaintiffs raised the same due process arguments in their motions for recusal as they do in this suit, so that the district court could not conclude that the Plaintiffs suffered a due process violation without finding that the motions to recuse were decided incorrectly. The *Rooker-Feldman* doctrine forbids this action. *Executive Arts*, 391 F.3d at 793. The doctrine, based upon principles of abstention and res judicata, promotes firmly-held notions of federalism and comity by preserving the integrity "of the state court decision-making process" and "the repose of state court judgments." *Adkins v. Underwood*, 520 F.2d 890, 892-93 (7th Cir. 1975); *see also Owens v. Spirko*, 54 F.3d 271, 274 (6th Cir. 1995). It is consistent with these principles to conclude that, despite the fact that the Plaintiffs filed this claim before the motions to recuse were denied in state court, the *Rooker-Feldman* doctrine nonetheless divested the district court of its subject matter jurisdiction once the motions to recuse were denied. *See Exxon Mobil*, 364 F.3d at 105 (concluding that the filing of a federal claim before a state court judgment is reached "does not escape *Rooker-*

---

a party alleges that the judges who decided her issue were biased against her. We decline to do so, for in such a case, the party's recourse is the same as that of all those parties who were unable to file a claim in federal district court on account of the *Rooker-Feldman* doctrine, to petition for a writ of certiorari from the United States Supreme Court.

*Feldman*'s grasp. The only timing relevant is whether [a] state judgment precedes a federal judgment on the same claims."). As the *Exxon Mobil* court noted:

> [W]ere we to find that the *Rooker-Feldman* [doctrine] . . . did not apply to federal actions filed prior to the state court's final judgment, we would be encouraging parties to maintain federal actions as "insurance policies" while their state court claims were pending. This defeats an "elementary principle" underpinning the *Rooker-Feldman* doctrine -- 'that a party's recourse for an adverse decision in state court is . . . ultimately [to] the Supreme Court under § 1257, not a separate action in federal court.

*Id.* (citations omitted).[6]

B.       *Younger* Abstention

Even if we were to conclude that the *Rooker-Feldman* doctrine did not divest the district court of its jurisdiction when the motions to recuse were decided in state court, we would still affirm the dismissal of the Plaintiffs' claim on the district court's alternative theory, *Younger* abstention. Generally, the *Younger* abstention doctrine counsels a federal court to abstain from adjudicating a matter properly before it in deference to ongoing state proceedings. *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). For purposes of determining whether a district court should abstain from exercising its jurisdiction on the basis of the *Younger* doctrine, we consider 1) whether the underlying proceedings constitute an ongoing judicial proceeding, 2) whether the proceedings implicate important state interests, and 3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Id.* The Plaintiffs do not even cite *Younger* or any case relating to the doctrine, let alone raise an argument contesting the application of the *Younger* abstention doctrine. In any event, upon our own review, we conclude that all three factors were met. The motions for recusal against the Defendant justices certainly constituted ongoing judicial proceedings at the time the federal complaint was filed; important state interests, such as when and under what circumstances Michigan Supreme Court justices should recuse themselves, were implicated; and the Plaintiffs had an adequate opportunity to raise their constitutional challenge, as evidenced by the fact that their lengthy brief in support of their motion to recuse contained the same arguments and proofs as presented in their complaint filed in federal court.

For the foregoing reasons, we AFFIRM.

---

[6]The concern that a party may attempt to maintain her federal action as an insurance policy while her state court proceedings were pending is especially acute here where the Plaintiffs filed this federal claim nearly five months after they filed their motions to recuse in state court.