RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0469p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GEOFFREY N. FIEGER,

   *Plaintiff-Appellant,*

   *v.*

JOHN D. FERRY, JR., et al.,

   *Defendants-Appellees.*

No. 05-1295

---

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 04-60089—Marianne O. Battani, District Judge.

Argued: September 21, 2006

Decided and Filed:  December 26, 2006

Before: SILER and CLAY, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael R. Dezsi, FIEGER, FIEGER, KENNEDY & JOHNSON, Southfield, Michigan, for Appellant.  Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.  **ON BRIEF:** Richard L. Steinberg, Detroit, Michigan, for Appellant.  Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

   STAFFORD, D. J., delivered the opinion of the court, in which SILER, J., joined.  CLAY, J. (pp. 9-13), delivered a separate concurring opinion.

---

## OPINION

---

   STAFFORD, District Judge.   Plaintiff, Geoffrey N. Fieger ("Fieger"), appeals the district court's dismissal of his § 1983 civil rights action challenging the refusal of certain Michigan Supreme Court Justices to recuse themselves from cases in which he is involved.  We **AFFIRM** the district court's decision to dismiss Fieger's challenge to the Justices' past recusal decisions.  We

---

  [*] The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

**REVERSE** the district court's decision to dismiss Fieger's challenge to the constitutionality of Michigan's recusal rule.

## I. BACKGROUND

This appeal arises out of what the district court described as the "acrimonious and well-publicized dialogue" between Fieger, a former gubernatorial candidate and well-known Michigan trial lawyer, and several justices of the Michigan Supreme Court. Fieger has been an outspoken critic of the Michigan Supreme Court, and–in turn–several of the justices have made public remarks regarding Fieger. Claiming bias, Fieger sought the recusal of four of the justices–Maura Corrigan, Clifford W. Taylor, Robert P. Young, Jr., and Stephen J. Markman (collectively, "the Justices")–in two appeals that were pending before the Michigan Supreme Court in cases involving his clients. In one of those cases, *Gilbert v. DaimlerChrysler Corp.,* 669 N.W.2d 265 (Mich. 2003), a jury awarded Fieger's clients a substantial verdict. After the verdict was affirmed by the Michigan Court of Appeals, the Michigan Supreme Court granted leave to appeal, then reversed the trial court's judgment entered on the verdict, thus causing Fieger to lose his entitlement to contingent fees. In the other case, *Graves v. Warner Brothers*, 669 N.W.2d 552 (Mich. 2003), a judgment favorable to Fieger's clients was reversed by the Michigan Court of Appeals. The Michigan Supreme Court later denied the plaintiff's application for appeal, again causing Fieger to lose his entitlement to contingent fees. Although Fieger was trial counsel in both cases, he did not argue either case at the appellate level.

Before rulings were issued on the recusal motions in *Gilbert* and *Graves*, Fieger and his clients filed an action in the United States District Court for the Eastern District of Michigan *(Gilbert v. Ferry*, No. 03-60185), claiming that they were entitled to a fair hearing on the recusal motions before an impartial tribunal. After the Justices denied the recusal motions in the two state court cases, the federal district court dismissed the action for lack of subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine.[1] *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 618 (E.D. Mich. 2003) (the "*Gilbert* case"). The district court explained that, because the plaintiffs had unsuccessfully raised the same due process arguments in their motions for recusal filed in the state court cases, the federal court could not find that the plaintiffs' due process rights were violated without also finding that the justices wrongly decided the motions for recusal. *Id.* at 618. This court initially affirmed the district court's dismissal of the lawsuit on *Rooker-Feldman* grounds. *Gilbert v. Ferry*, 401 F.3d 411, 418 (6th Cir. 2005). On rehearing, however, this court vacated the *Rooker-Feldman* portion of its previous opinion, citing the Supreme Court's recent decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). *Gilbert v. Ferry*, 413 F.3d 578, 579 (6th Cir. 2005). In *Exxon Mobil*, the Supreme Court held that the *Rooker-Feldman* doctrine is limited to "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. Because Fieger and his clients filed their federal action before entry of judgment in the two parallel state court cases, this Court held that, under *Exxon Mobil*, the *Rooker-Feldman* doctrine did not preclude the district court's review of the plaintiffs' claims regarding the Justices' interlocutory orders denying the plaintiffs' motions to recuse. The Court nonetheless upheld the dismissal of the plaintiff's federal lawsuit on both *Younger*-abstention and collateral estoppel grounds. *Gilbert*, 413 F.3d at 579.

In the meantime, on his own behalf, Fieger filed this action in the United States District Court for the Eastern District of Michigan (*Fieger v. Ferry*, No. 04-60089) (the "*Fieger* case"). He did so in response to the district court's suggestion in the *Gilbert* case that "[i]f Mr. Fieger believes

---

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

he has a viable claim, he may file a separate suit where his due process interests, whatever they may be, form the 'primary question' presented." *Gilbert*, 298 F. Supp. 2d at 616 n.10. In this, the *Fieger* case, Fieger alleged that the Justices deprived him of his constitutional rights by expressing "public, personal, political, and professional animus" toward him, by refusing to recuse themselves from cases in which he was involved, and by actively pursuing disciplinary proceedings against him before the Attorney Grievance Commission. Invoking 42 U.S.C. § 1983, Fieger asked the court to enter "[a] declaratory judgment that the Defendants, and each of them, has violated the Constitutional Rights of the Plaintiff" as alleged. He also asked the court to enter a judgment declaring that the Michigan Supreme Court's interpretation of the state's recusal rule was unconstitutional. Finally, he asked the court to enter a judgment declaring that Michigan's recusal rule either permits the State Court Administrator[2] to assign a judge of another court to hear and decide a motion to recuse a supreme court justice or, in the alternative, is unconstitutional.

The district court dismissed Feiger's case on *Rooker-Feldman* grounds. Despite Fieger's allegation that "[t]here is no parallel State proceeding, nor any decision or order of a State Court which would divest this Court of jurisdiction under the *Rooker-Feldman* doctrine," the district court determined that it could not enter "[a] declaratory judgment that the Defendants, and each of them, has violated the Constitutional Rights of the Plaintiff" without sitting in review of the state court's implicit judgment that Fieger's constitutional rights were not violated by the Justices' failure to recuse themselves. The district court also rejected Fieger's as-applied challenge to Michigan's recusal rule, refusing to "second guess" the Michigan Supreme Court's interpretation of its own rule. Finally, the district court rejected Fieger's facial challenge to the state court recusal rule, finding such challenge to be inextricably intertwined with the final judgments of the Michigan Supreme Court. In the words of the district court:

> The substance and language of the Complaint make clear that Plaintiff's constitutional challenge is not "general" at all; rather the Complaint's factual and legal allegations are exclusively limited to the manner in which Plaintiff believes the Justices violated his rights or the rights of his clients by refusing to recuse themselves. Plaintiff's factual allegations are entirely specific to the Justices' political censure of him and their rejection of his motions for recusal. More conspicuously, Plaintiff's legal claims are limited to the alleged injury to *his* constitutional rights caused by the Justices' decision not to recuse themselves. Indeed, the very manner in which Plaintiff frames the issue presented by his putative challenge betrays his intention to relitigate issues that were prominent in the state proceedings. Certainly, there may be situations where a portion of a complaint stating a general challenge may be permitted to proceed even though the general thrust of the complaint presents an as-applied challenge. However, where, as here, a complaint is devoid of any legal or factual claim that is independent of previous state court proceedings, the *Rooker-Feldman* doctrine requires dismissal.

Distr. Ct. Order at 12-13 (citations omitted); J.A. at 28-29.

Fieger filed this timely appeal on March 1, 2005.

---

[2] The State Court Administrator, John D. Ferry, Jr., is a named defendant in Fieger's lawsuit.

## II. MICHIGAN'S RECUSAL RULE

Michigan Court Rule ("MCR") 2.003 governs the disqualification of judges in civil proceedings, providing, in pertinent part, as follows:

(A) Who May Raise.  A party may raise the issue of a judge's disqualification by motion, or the judge may raise it.

(B) Grounds.  A judge is disqualified when the judge cannot impartially hear a case, including but not limited to instances in which:

> (1) The judge is personally biased or prejudiced for or against a party or attorney.
>
> . . . .

(C) Procedure.

> . . . .
>
> (3) Ruling. The challenged judge shall decide the motion. If the challenged judge denies the motion,
>
> (a) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo;
>
> (b) in a single-judge court, or if the challenged judge is the chief judge, on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo.

Fieger maintains that the Michigan Supreme Court does not follow the procedures set forth in MCR 2.003(c)(3) for review of a judge's decision not to recuse himself or herself from a case. He contends that, by failing to follow such procedures, the Michigan Supreme Court violates the Constitutional guarantee to due process.  In his complaint, he asks the court to enter a declaratory judgment that the word "judge" in MCR 2.003 includes a "Justice" of the Michigan Supreme Court, thus making the review procedures applicable to the Michigan Supreme Court.  In the alternative, Fieger asks the Court to declare that the rule is unconstitutional, both on its face and as applied.

## III.  THE *ROOKER-FELDMAN* DOCTRINE

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court held that a federal district court may not review a state court decision for alleged federal law error.  Such holding was reaffirmed sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In *Feldman*, the court wrote:

> [L]ower federal courts possess no power whatever to sit in direct review of state court decisions.  If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial [of a claim] in a judicial proceeding . . . then the District Court is in essence being called on to review the state-court decision.  This the District Court may not do.

*Id.* at 483 n.16 (internal quotation marks and citation omitted). The principles enunciated in *Rooker* and *Feldman* have become known as the *Rooker-Feldman* doctrine. As clarified in *Exxon Mobil*, application of the doctrine is confined to "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. As stressed in *Exxon Mobil*, "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks omitted); *see also McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) (explaining that "[i]n *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase 'inextricably intertwined' to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment"); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) (explaining that "federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they complain of an injury caused by a state judgment" (emphasis omitted)); *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (explaining that "[u]nder *Exxon*, . . . *Feldman*'s 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court"). In other words, "[t]he key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *McCormick*, 451 F.3d at 394.

## IV. DISCUSSION

### A. Standard of Review

This court reviews *de novo* a district court's dismissal of a case on the grounds that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction. *McCormick*, 451 F.3d at 389.

### B. Standing

Although the district court did not address the issue of Fieger's standing to sue, it is–of course–an issue that may be raised and/or considered at any time. In general, to establish standing to bring suit, a plaintiff must show that (1) he or she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or "demonstrate actual present harm or a significant possibility of future harm." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (explaining that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"); *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969) (dismissing the plaintiff's action seeking a declaration that a state statute was unconstitutional because, although the plaintiff had been prosecuted under the statute in the past, the likelihood of the plaintiff's suffering repeat exposure to the statute was remote and, thus, the plaintiff lacked standing).

Here, Fieger has alleged that "[t]he threat that the Plaintiff cannot, and will not, receive a fair hearing before an impartial and independent tribunal is real, immediate, and continuing." Compl.

at ¶ 20.  In 2005, the district court in *Gilbert* noted that "Mr. Fieger has been involved with as many as thirty-eight cases filed with the [Michigan] Supreme Court."  *Gilbert*, 298 F. Supp. 2d at 609.  In his complaint, Fieger alleged that one of the Justices stated–during the 2000 Election Cycle–that "Geoffrey Fieger has $90 million in lawsuit awards pending in the State Court of Appeals."  Compl. at ¶ 11(f).  Given his litigation history, it is reasonable to conclude that there is a significant, rather than a remote, possibility that Fieger's present and future cases will someday reach the Michigan Supreme Court.  Because it is, therefore, likely, rather than speculative, that Fieger will again face the recusal issue that he has faced in past cases, we find that Fieger has standing to pursue his claim for declaratory relief in this case.

## C.  Challenge to the Justices' Past Actions

In his brief on appeal, Fieger explains that "[t]he only relief which [he] sought, in the case at bar, was the entry of a declaratory judgment that the failure to provide a meaningful mechanism by which the impartiality of a member of the Michigan Supreme Court could be feasibly and realistically challenged was a denial of due process."  Pl.'s Br. at 15.  It is unclear from his complaint, however, that Fieger so limits his § 1983 claim.  Indeed, it is only in the section entitled "Prayer for Relief" that the reader of the complaint is made aware that Fieger seeks to challenge the constitutionality of Michigan's recusal rules.  His complaint otherwise focuses on the past actions of the Justices, including the Justices' past expression of "public, personal, political, and professional animus" toward Fieger, the Justices' pursuit of disciplinary proceedings against Fieger in reprisal for Fieger's exercise of his First Amendment rights, and the Justices' refusal "to recuse themselves from making decisions concerning [Fieger]."  Compl. at ¶ 12; J.A. at 10-12.  The district court described Fieger's complaint as being "devoid of any legal or factual claim that is independent of previous state court proceedings."  Dist. Ct. Op. at 13; J.A. at 29.  Fieger, moreover, requests in his complaint a declaration that "the Defendants, and each of them, has violated the Constitutional Rights of the Plaintiff, as alleged."  Compl. at 7; J.A. at 13.  The district court understandably construed such a request as a request for a declaration regarding the *past* actions of the Justices, including the Justices' refusal to recuse themselves in past cases.[3]  To the extent, if any, that Fieger seeks such a declaration, the district court was correct in finding that *Rooker-Feldman* precludes the federal courts from reviewing the Justices' past recusal decisions.[4]  Fieger's counsel conceded as much at oral argument.  To this extent, therefore, the district court's judgment must be affirmed.

## D.  Challenge to Michigan's Recusal Rule

The more difficult issue is whether the district court was correct in determining that Fieger's constitutional challenge (both facial and as-applied) to Michigan's recusal procedures was barred by *Rooker-Feldman*.  Fieger challenges the district court's decision, arguing that *Rooker-Feldman* is inapplicable to his claims.  Among other things, Fieger stresses that he is asking the federal court to compel compliance with the Constitution in "the post-*Gilbert* litigation which poses the continuing conundrum, unresolved, and unresolveable, by the Michigan Supreme Court."  Pl.'s Br. at 16.  He suggests, in other words, that his litigation is forward-looking, that it is independent of

---

[3] A declaratory judgment is an inappropriate mechanism to address allegations of past harm. *See AmSouth Bank v. Dale,* 386 F.3d 763, 786 (6th Cir. 2004) (explaining that "[t]he 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing").

[4] Although Fieger was not a party in the state court cases, and while–generally–"[t]he *Rooker-Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court," *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citation omitted), Fieger (whether on behalf of his clients or on his own behalf) cannot seek in federal court to undo a state court judgment.

the two cases already decided, and that he is not complaining of injuries caused by those past cases. Fieger's counsel reiterated this argument during oral argument.

The district court was not convinced by Fieger's attempts to redefine the relief sought. Finding Fieger's complaint devoid of any legal or factual claim independent of the previous state court proceedings, the court rejected Fieger's argument regarding an independent claim, concluding that *Rooker-Feldman* barred all of Fieger's claims, however couched, because–at the very least–they were inextricably intertwined with the final judgments of the Michigan Supreme Court.

The district court cited two cases in support of its decision: *Howell v. Supreme Court of Texas*, 885 F.2d 308 (5th Cir. 1989), and *Chafin v. West Virginia Supreme Court of Appeals*, No. 3:98-0134, 1998 WL 1297605 (S.D. W.Va. Dec. 18, 1998), *aff'd*, 203 F.3d 819 (4th Cir. 1999).  In *Howell,* the Fifth Circuit considered whether the *Rooker-Feldman* doctrine barred a plaintiff's claim that a Texas Rule of Appellate Procedure, governing recusal and disqualification of judges, was unconstitutional on due process grounds.  Before filing his constitutional challenge in federal court, Howell (a judge on the Texas Court of Appeals) had filed motions requesting that the justices of the Texas Supreme Court recuse themselves from hearing an appeal from an adverse jury verdict in a case that he, as the plaintiff, had brought in state court.  When the justices refused, Howell filed a § 1983 action in federal court.  The Fifth Circuit concluded that Howell's constitutional claim was barred by *Rooker-Feldman* because it was inextricably intertwined with the state court's judgment.

In *Chafin*, the plaintiff likewise challenged the constitutionality of the state's recusal rules. Before filing suit in federal court, the plaintiff had unsuccessfully requested that certain state supreme court justices disqualify themselves from hearing his divorce appeal.  While acknowledging that a ruling to the effect that West Virginia's recusal rules were unconstitutional would not necessarily mean that the recusal decisions themselves were wrong, the federal district court nonetheless dismissed the claim, finding that the plaintiff's constitutional claim was inextricably intertwined with the state court decision.  Such finding was based not only on the language of the plaintiff's complaint, the substance of which was limited to a core allegation that the state justices had violated his constitutional rights by not recusing themselves from the appeal of his divorce, but also on the obvious inability of the plaintiff to establish harm in the absence of decisions by the state court justices.  The Fourth Circuit affirmed the district court's decision on *Rooker-Feldman* grounds.

It is important to note that *Howell* and *Chafin* were both decided before the Supreme Court clarified the reach of *Rooker-Feldman* in *Exxon Mobil*.  Indeed, given the lessons taught in *Exxon Mobil* and its progeny, the decisions in *Howell* and *Chafin* are not persuasive here.

In *Feldman*, the Supreme Court explained:

> Challenges to the constitutionality of state bar rules . . . do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. . . . United States District Courts . . . have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case.

*Feldman*, 460 U.S. at 486.  In *Exxon Mobil*, the Court emphasized that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293.

In *McCormick v. Braverman*, this court addressed the question of "how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-*

*Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction." 451 F.3d at 393.  In the words of the *McCormick* court:

> The inquiry . . . is the source of the injury the plaintiff alleges in the federal complaint.  If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.  If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.*

        To the extent that Fieger challenges the constitutionality of Michigan's recusal rules by alleging that "[t]he threat that the Plaintiff cannot, and will not, receive a fair hearing before an impartial and independent tribunal is real, immediate, and continuing," *Rooker-Feldman* does not bar his action.  To that extent, the source of Fieger's alleged injury is not the past state court judgments; it is the purported unconstitutionality of Michigan's recusal rule as applied in future cases.  Such a claim is independent of the past state court judgments.  Thus, insofar as the district court dismissed Fieger's challenge to the constitutionality of Michigan's recusal rule pursuant to the *Rooker-Feldman* doctrine, the court's judgment must be reversed.

## V.  CONCLUSION

        For the reasons set forth above, the district court's judgment of dismissal is **AFFIRMED** to the extent, if any, that Fieger challenges the Justices' past recusal decisions.  The district court's judgment of dismissal is **REVERSED** to the extent Fieger challenges the constitutionality of Michigan's recusal rule.  The case shall be **REMANDED** to the district court for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring. I concur in the majority opinion, but write separately to more fully explicate Plaintiff's standing to challenge Michigan's Recusal Rule. In my view, Plaintiff has established standing to sue both in his own right, and on behalf of his present and future clients.

Three elements comprise the "irreducible constitutional minimum" of standing: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff can establish injury in fact by showing that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560 (internal citations and quotations omitted). Where a plaintiff seeks declaratory judgment, he must demonstrate "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (citations omitted).

Plaintiff contends that the Rule violates his own due process rights inasmuch as he stands to suffer the deprivation of his property interest in fees and in his client base, and of his liberty interest in practicing his chosen profession, absent any prior procedural review. (*See* Pl.'s Br. at 30 (alleging "significant possibility of future harm" in the form of "loss of substantial income"); Compl. at ¶ 10; J.A. at 9 (claiming violation of his right "to pursue his chosen profession . . . free from reprisal for exercising his First Amendment rights")) This doubtless constitutes a cognizable injury to legally protected interests. *See Singleton v. Wulff*, 428 U.S. 106, 112-13 (1976) (loss of income constitutes injury in fact to physicians); *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (acknowledging "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment"). A substantial controversy exists in this case, characterized by the "significant possibility" of harm to Plaintiff's economic and professional interests in the future. *See Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).

The significant possibility of future harm here is born of the Justices' past construction and application of the Michigan Recusal Rule. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). The immediacy and reality of the threat of future harm flow from the fact that many of Plaintiff's cases have been appealed to the Michigan Supreme Court, and that notwithstanding the "acrimonious and well-publicized dialogue" between Plaintiff and the Justices, the Justices have declined to recuse themselves from consideration of those appeals. Additionally, Plaintiff continues to represent clients before Michigan's tribunals, and to undertake representation of new clients. *Cf. Zwickler*, 394 U.S. at 109 (finding no controversy of "sufficient immediacy and reality" in a challenge to a law criminalizing distribution of anonymous handbills given the low likelihood that the targeted "Congressman would again be a candidate" for office). The State of Michigan itself has licensed Plaintiff in this regard, and he engages in the endeavor of legal representation as a profession. He therefore demonstrates a "realistic threat" of being subject to a forum in which he asserts the Rule should apply. Thus, Plaintiff asserts a cognizable injury for purposes of standing.

A causal connection must also exist "between the assertedly unlawful conduct and the alleged injury." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). That is, the injury must "be fairly traceable to the challenged action." *Defenders of Wildlife*, 504 U.S. at 560 (citations omitted); *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180 (2000); *see also Allen*, 468 U.S. at 751. Plaintiff asserts that the Michigan Recusal Rule either applies to the Michigan Supreme Court, or violates his due process rights both facially and as-applied. The injuries alleged to Plaintiff's economic and professional interests flow directly from the Rule inasmuch as the Justices interpret the Rule to apply only to Michigan's lower courts and court of appeals. *See Fieger v. Ferry*, No. 04-60089, Slip Op. at 3 (E.D. Mich. Jan. 13, 2005) (noting that "recent practice of the Michigan Supreme Court indicates that, although the court does entertain motions for recusal or disqualification, it does not follow the procedures set forth in MCR 2.003"). These injuries do not "result[] from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976); *see also Allen*, 468 U.S. at 757 (citations omitted). Rather, the deprivation alleged is "fairly traceable" to the Rule which, as interpreted by the Justices, provides no mechanism for review and requires no statement on the record of the rationale supporting the Justices recusal decisions.

Further, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561 (citations omitted); *see also Allen*, 468 U.S. at 751. Here, the Court looks to "the causal connection between the alleged injury and the judicial relief requested." *Allen*, 468 U.S. at 753 n.19. A favorable decision in this case would redress the injury advanced. On remand, the district court is capable of providing relief sufficient to redress the injury Plaintiff asserts. Should the district court determine, after consideration on the merits, that such relief is warranted, declaratory judgment would redress Plaintiff's alleged injuries either by requiring the Justices to follow the Michigan Recusal Rule as written, or by effectively requiring amendments to that Rule.[1] Thus, Plaintiff has established standing to assert his own due process rights.

Additionally, Plaintiff asserts his present and future clients' due process rights to a "fair hearing before an impartial and independent tribunal." Plaintiff maintains his clients will likely suffer injury absent some procedure for reviewing the Justices' recusal decisions in future cases on appeal from his lower court victories and losses. (Compl. at ¶ 19; J.A. at 13) To secure adjudication on the merits of his clients' rights, Plaintiff must first overcome the Supreme Court's prudential limitation on third party standing.

As a general matter, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). However, the Supreme Court has delineated exceptions to its prudential limitation on third party standing, and has allowed plaintiffs to assert the rights of a third party "[w]here practical obstacles prevent a party from asserting rights on behalf of itself." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984). To fit within this exception, a plaintiff must show three elements: first, injury in fact; second, a close relationship with the third party whose rights he asserts; and third, that the third party has no forum to protect its own interests. *Id.*; *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *Singleton*, 428 U.S. at 114-16; *Eisenstadt v. Baird*, 405 U.S. 438, 443-46 (1972).

---

[1] The district court on remand will consider the merits of Plaintiff's twin due process challenges and this discussion of Plaintiff's standing should in no way be construed as commentary on the merits of Plaintiff's claims. *See, e.g.*, *Dep't of Labor v. Triplett*, 494 U.S. 715, 721, 726 (1990) (finding third party standing to assert clients' due process rights, but later concluding there was no violation); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3, 632-33 (1989) (prudential limitation on third party standing not applicable, but Sixth Amendment claim fails on the merits). Most appropriately framed, the standing inquiry looks only to the existence of a case or controversy sufficient to insure the parties properly frame the issues and vigorously advocate their views.

On at least four occasions, the Supreme Court has considered the propriety of permitting lawyers to assert the constitutional rights of their clients. Two times, the lawyers met the strictures of prudential standing and the Court proceeded to consideration on the merits. *See Caplin & Drysdale*, 491 U.S. at 623 n.3; *Triplett*, 494 U.S. at 721. In *Caplin & Drysdale*, the limitation on third party standing did not prevent the litigant law firm from asserting its client's Sixth Amendment Right to Counsel in a challenge to the asset forfeiture provision of the continuing criminal enterprise statute. *Caplin & Drysdale*, 491 U.S. at 623 n.3. The Court found third party standing appropriate even though it concluded the criminal defendant faced no significant hurdles in personally asserting the right. *Id.* In the Court's view, the law firm properly relied on its client's constitutional rights because "[t]he attorney-client relationship . . . is one of special consequence," and the challenged provision "may 'materially impair the ability of' third persons in [the client's] position to exercise their constitutional rights." *Id.*

In *Triplett*, the Supreme Court found an attorney had third party standing to advance his clients' Fifth Amendment due process rights to legal representation in a challenge to the Black Lung Benefits Act, which limited attorneys' fees to those approved by the Department of Labor. *Triplett*, 494 U.S. at 720-21. The lawyer there agreed to represent black lung claimants for a contingent fee. *Id.* at 718. As a result, a committee of the state bar recommended sanctions against him and filed a complaint to enforce them. *Id.* The state's highest court denied enforcement, finding the Act violated due process in "'effectively den[ying] claimants necessary access to counsel.'" *Id.* at 718-19.

In defense to the disciplinary charges, the lawyer in *Triplett* challenged the fee scheme set forth in the Act, alleging it violated his clients' interests. *Id.* at 720. Finding third party standing appropriate, the Court noted that "enforcement of [the] restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement (typically a constitutional entitlement)." *Id.* Additionally, the Court observed that the due process rights of existing claimants were at issue since, in the same action, the government sought to recover fees improperly paid. *Id.* at 721.

On two occasions, the Supreme Court denied third party standing to lawyers pressing their clients' rights. *See Gabbert*, 526 U.S. at 292-93; *Tesmer*, 543 U.S. at 134. In *Gabbert*, the Court declined third party standing for a lawyer to assert his client's purported right to have counsel present during her grand jury testimony. *Gabbert*, 526 U.S. at 292. There, the client could ostensibly have brought a § 1983 claim in her own right. Most recently, in *Kowalski v. Tesmer*, two attorneys challenged a law prohibiting the appointment of appellate counsel to represent indigents who pled guilty. *Tesmer*, 543 U.S. at 127. The *Tesmer* court concluded that the attorneys' relationship with "as yet unascertained Michigan criminal defendants" was not sufficiently close, characterizing it as a "hypothetical" relationship with unknown claimants and observing that the alleged violation did not result from enforcement of the law against the litigant lawyers. *Id.* at 131. Additionally, the Court found no hindrance to the indigent defendants' ability to personally challenge the law either on direct appeal or in state or federal collateral proceedings. *Id.* at 131-32. Denying standing, the Court relied in part on the "fair inference" that the plaintiff attorneys "wanted a federal court to short-circuit the State's adjudication of th[e] constitutional question." *Id.* at 132-33. Accordingly, in both *Gabbert* and *Tesmer*, the plaintiffs failed to meet the requirements of prudential standing.

In my view, Plaintiff's challenge on behalf of his clients fits neatly within the exceptions established in the Court's third party standing jurisprudence. First, as previously discussed, Plaintiff alleges adequate injury in fact. He "can be expected satisfactorily to frame the issues" here, *see Joseph H. Munson Co., Inc.*, 467 U.S. at 958, because of his personal stake in the matter. Second, Plaintiff has established a close relationship with his current and future clients.

An attorney's relationship with his clients is undeniably a close one, and the Supreme Court has recognized the "special consequence" of that relationship. *Caplin & Drysdale*, 491 U.S. at 623 n.3; *see also Triplett*, 494 U.S. at 721; *but see Gabbert*, 526 U.S. at 292-93; *Tesmer*, 543 U.S. at 131-32. Here, Plaintiff asserts the rights of *both* existing and future clients. At the trial level, Plaintiff currently represents clients whose cases may progress to the highest state level of appeal, and he continues to undertake new representation. Plaintiff's current clients form an ascertainable class, and any and all individuals who retain him share the same interests as that class. In *Triplett*, the lawyer had standing to broadly challenge the Black Lung Benefits Act due to his relationship with certain existing clients. *See Triplett*, 494 U.S. at 721. There, the lawyer predicated his challenge on rights not actually violated but capable of violation with respect to future clients, since his existing clients already had the benefit of his representation. *Id*. at 718. Similarly, Plaintiff's relationship with current clients suffices to support his broad-based challenge to the Michigan Recusal Rule, a challenge designed to protect the rights and interests of future clients.

What is more, the Michigan Recusal Rule provides for disqualification where a "judge is personally biased . . . against a party *or attorney*." MCR 2.003(B)(1) (emphasis added). That Rule further establishes a procedure for *de novo* review of recusal motions following a denial. MCR 2.003(C). As interpreted by the Justices, application of the Michigan Recusal Rule *against Plaintiff* could impair his current and future clients' access to the type of fair and impartial tribunal secured under the Due Process Clause. *See Triplett*, 494 U.S. at 720.

Additionally, courts have more readily found a sufficiently close relationship where the plaintiff and the third parties share a "congruence of interests." *Powers*, 499 U.S. at 414. In this case, "[t]he activity sought to be protected is at the heart of the business relationship between [Plaintiff] and [his] clients," *see Joseph H. Munson Co., Inc.*, 467 U.S. at 958, who contract for Plaintiff's services and expect to receive adequate and meaningful representation. To be sure, Plaintiff's present and future clients seek and retain legal counsel to bolster their chances of prevailing at every stage of judicial proceedings. Absent an impartial and unbiased forum for appeals brought on their behalf, the assistance of counsel is much less meaningful to a litigant. By asserting his clients' rights, Plaintiff seeks to insure that they enter the appellate forum on equal footing with their opponents. Plaintiff's unquestionable desire to protect his client base, as well as his personal pecuniary interest in preserving his clients' jury awards, align his interests with those of his clients in such a way to insure that he will "properly . . . frame the issues and present them with the necessary adversarial zeal." *See id*. at 956. Thus, Plaintiff's interests in raising a due process challenge to the Rule directly correlate with his clients' interests.

Third, and most critically in this case, Plaintiff's clients have no viable avenue to personally challenge the constitutionality of the Michigan Recusal Rule. *See Baird*, 405 U.S. at 446 (permitting physician to assert the rights of his patients to access contraceptives because they "are not themselves subject to prosecution and, to that extent, are denied a forum in which to assert their own rights"); *see also Barrows v. Jackson*, 346 U.S. 249, 257 (1953) (citing *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). This is simply not a case where Plaintiff or his clients failed to utilize an alternate route to have their due process rights adjudicated. Although Plaintiff's clients could hypothetically challenge Michigan's Recusal Rule in the first instance, they would lack standing to do so because they could not "demonstrate . . . a significant possibility of future harm." *See Peoples Rights Org., Inc.*, 152 F.3d at 527. Nor could they prove actual present harm, until their cause – in effect – would be barred by the preclusive effects of collateral estoppel or the *Younger* doctrine. *See Gilbert v. Ferry*, 413 F.3d 578, 579, *reh'g and vacating in part*, 401 F.3d 411 (6th Cir. 2005). Moreover, "normal processes of appellate review" provide no alternative. *Cf. Cohn v. Brown*, No. 04-5375, 161 F. App'x 450, 455 (6th Cir. Dec. 14, 2005) (eschewing attorney's challenge to the court's method of calculating fees in bankruptcy proceedings when he could have directly appealed). Further, unlike the litigants in *Tesmer*, Plaintiff brought this § 1983 suit *not* because he "wanted a federal court to short-circuit the State's adjudication of this constitutional question," *see* 543 U.S.

at 132-33, but because he wanted the question to be adjudicated *at all*.  Plaintiff's cause falls squarely within the well-defined exception to the prudential limitation on third party standing.[2] Consequently, in my view, Plaintiff has established standing to challenge the Michigan Recusal Rule to protect his clients' due process rights, as well as his own.

---

[2] To be clear, by concluding that Plaintiff has standing to assert the due process rights of his clients, I do not advocate a more expansive view that lawyers should in all cases be permitted to "bring in court the claims of future unascertained clients."  *Tesmer*, 543 U.S. at 134 (quoting *Tesmer v. Granholm*, 333 F.3d 683, 709 (6th Cir. 2003) (Rogers, J., dissenting in part), *rev'd sub nom. Kowalski v. Tesmer*, 543 U.S. 125 (2004)).  Narrowly confined to Plaintiff's unique circumstance, I would permit third party standing in this case because the challenged Rule potentially impacts the due process rights of an ascertainable class comprised of current clients, and correspondingly any and all clients that retain Plaintiff.