**S.A. RESTAURANTS, INC., Plaintiff,**

**v.**

**Andrew J. DELONEY, individually and in his official capacity as Chairman of the Michigan Liquor Control Commission, Defendant.**

**Case No. 11–13985.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 4, 2012.

Timothy P. Murphy, St. Clair Shores, MI, for Plaintiff.

Felepe H. Hall, Gerald A. Whalen, MI Dept. of Attorney General, Lansing, MI, Rosendo Asevedo, Jr., Michigan Liquor Control Commission, Farmington, MI, for Defendant.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DECLARING STATE STATUTE UNCONSTITUTIONAL ON ITS FACE, ENJOINING ENFORCEMENT, AND DISMISSING REMAINDER OF COMPLAINT*

DAVID M. LAWSON, District Judge.

The plaintiff, S.A. Restaurants, Inc., operated an "adult cabaret" on Eight Mile Road in Detroit, Michigan that featured topless dancing entertainment. For a number of years, its attempt to transfer its Topless Activity Permit to a prospective purchaser were frustrated, it says, because of the delay in the approval process that was countenanced by the Michigan liquor control statutes and corresponding regulations. After the transfer finally occurred, the plaintiff filed the present lawsuit against the current Michigan Liquor Control Commissioner in his official and individual capacities, arguing that the statute is unconstitutional as applied and on its face, and seeking declaratory and injunctive relief and damages. Thereafter, the defendant filed a motion to dismiss and the plaintiff filed a motion for partial summary judgment. The Court heard oral argument on November 26, 2012 and now concludes that the plaintiff's claim for damages cannot survive, nor can its as-applied challenge to the statute. However, the plaintiff has standing to assert a facial challenge to the statute, which the Court finds is a prior restraint on expressive activity and lacks the procedural safeguards that the First Amendment requires. Therefore, the Court will grant in part and deny in part the defendant's motion to dismiss and the plaintiff's motion for partial summary judgment, declare the statute unconstitutional with respect to the permit transfer process, and enjoin its enforcement.

## I.

The following facts are taken from the complaint. The plaintiff, S.A. Restaurants, Inc., operated "an adult cabaret" offering "live, non-obscene clothed and semi-nude ('topless') dance entertainment" at 20771 W. Eight Mile Road, Detroit, Michigan. Compl. at ¶ 4. The defendant, Andrew J. Deloney, is the current chairman of the Michigan Liquor Control Commission (MLCC), the state agency charged with issuing topless activity permits. According to public records, Deloney was appointed chairman of the MLCC on June 10, 2011 and assumed his duties on July 5, 2011.

Michigan law governs the issuance and transfer of licenses to sell alcoholic beverages at bars and restaurants. When those establishments also offer live entertainment, additional permits must be authorized by the MLCC. The plaintiff is challenging the constitutionality of Michigan Compiled Laws § 436.1916, which governs the issuance and transfer of ownership of Entertainment and Topless Activity Permits. An Entertainment Permit is required to present any performance for public viewing; both an Entertainment Permit and a Topless Activity Permit are required to present exotic dancing.

The plaintiff had been attempting to transfer its Class C Liquor License with Sunday Sales and Entertainment and Topless Activity Permits to ABCDE Operating, LLC, doing business as the Penthouse Club, since January 31, 2007. Under Michigan law, the MLCC will not issue permits without the approval of "the local legislative body of the jurisdiction within which the premises are located." Mich. Comp. Laws § 436.1916(10)(b). The MLCC apparently applied this require-

ment to transfer requests as well, since on March 7, 2007, the MLCC sent a Local Approval Notice to the City of Detroit. On February 6, 2008, the City of Detroit issued a temporary occupancy permit to the Penthouse Club for the Eight Mile Road location and the MLCC approved a management agreement allowing the Penthouse Club to do business under the plaintiff's license and permits. However, the application for the transfer of those permits was not acted upon between March 2, 2007 and September 2010. The plaintiff argues that the delay has caused damages in an amount exceeding $1,000,000 because under the management agreement the plaintiff has had to pay ABCDE Operating, LLC, ten percent of the revenue of the Penthouse Club, and that revenue for the relevant period has exceeding $10,000,000.

The defendant's response to the plaintiff's motion for summary judgment presents a somewhat different account of the transfer process. According to the defendant, in February 2007, the plaintiff ceased operation of its business and placed its license and permits into escrow. The MLCC received a request from ABCDE seeking the transfer of the license and permits on February 1, 2007. However, the MLCC was unable to process the request until December 28, 2007 because the plaintiff had not provided the necessary documents. On January 25, 2008, the MLCC's Lansing division received a report from the Enforcement Division recommending approval of ABCDE's request, but indicating that ABCDE needed to provide a lease agreement and verification of loan proceeds and to submit to inspection prior to approval.

According to the plaintiff, ABCDE filed a complaint against the City of Detroit on November 24, 2008, alleging that a moratorium imposed by the City of Detroit on the consideration of MLCC applications was unconstitutional. In response to this suit, the City of Detroit rewrote its procedures with respect to MLCC applications so as to place them in compliance with the applicable law. The plaintiff states that the new policies went into effect on June 23, 2009. According to the defendant, the policies were not adopted until August 25, 2009. In any event, on September 5, 2009, ABCDE submitted a petition to the City of Detroit seeking approval for the issuance of a topless activity permit, which the City of Detroit addressed but declined to approve or deny on November 20, 2009.

On December 22, 2009, ABCDE filed a lawsuit in federal court against the City of Detroit seeking to compel approval of the topless activity permit. *See* Case No. 09–14969. Judge George Steeh of this Court entered an order deeming ABCDE's transfer petition approved on January 21, 2010. In response to that order, the MLCC sent ABCDE a letter advising ABCDE that approval could not be considered because there were four code violations pending against the plaintiff that had allegedly occurred on January 28, 2010. The City of Detroit issued a complaint against the plaintiff on April 9, 2010 for additional violations; the complaint was resolved after a hearing on June 7, 2010.

On February 16, 2010, ABCDE filed another lawsuit in this district, this time against Nida Samona, the then-MLCC commissioner. *See* Case No. 10–10646. The complaint is similar to the complaint currently before this Court, with the exception of the requested money damages and the defendant. ABCDE sought unspecified compensatory damages and a preliminary and permanent injunction. The case apparently was resolved; a stipulated dismissal with prejudice was entered in that case on July 28, 2010.

Nonetheless, the MLCC denied the plaintiff's transfer request on June 23, 2010. According to the defendant, the denial was based on negative prior operating history of the members of ABCDE, the lack of a 10% down payment of the purchase price, and negative prior operating history of the lender. The plaintiff states that after that denial, two of the three members of ABCDE withdrew from the company. ABCDE appealed to the MLCC Administrative Commissioners, and after the submission of additional documentation by ABCDE, the MLCC approved the transfer on June 30, 2011. The plaintiff transferred the license and permits to ABCDE on September 9, 2011.

Plaintiff S.A. Restaurants filed the present complaint in this case under 42 U.S.C. § 1983 on September 13, 2011 against the present MLCC chairman, Andrew Deloney, in his individual and official capacities. It requests a declaratory judgment that Michigan Compiled Laws § 436.1916 is unconstitutional on its face and as applied and violates the First Amendment. The plaintiff also seeks damages in the amount of $500,000 from the defendant in his individual capacity, plus costs and attorney's fees. The defendant has filed a motion to dismiss, contending that the plaintiff's suit is barred by the Eleventh Amendment and the doctrine of *res judicata,* and the challenged statute is constitutional. The plaintiff countered with a motion for partial summary judgment, contending it is entitled to a judgment as a matter of law declaring the statute unconstitutional on its face.

## II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel.*

*Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir.2001) (citing *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008). As the Sixth Circuit explained,

> [t]o survive a motion to dismiss, [a plaintiff] must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal,* [556 U.S. 662, 678] 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 280 (6th Cir.2010).

### A. Eleventh Amendment

■ The defendant argues that the plaintiff's claims against him in his official capacity must be dismissed because they are barred by the Eleventh Amendment, and the claims against him in his individual capacity must be dismissed because the complaint does not allege facts that could subject him to personal liability. The plaintiff responds that it is requesting declaratory relief, and that suits against state officials seeking such relief are permissible under the Eleventh Amendment. The plaintiff also argues that the allegations in the complaint against the defendant in his individual capacity are sufficient to survive a motion to dismiss.

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to

extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State." U.S. Const. Amend. XI. In general, the Eleventh Amendment immunizes state officials from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, state sovereign immunity as recognized by the Eleventh Amendment does not extend to suits against state officials seeking to enjoin violations of federal law. *Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A plaintiff can "avoid[ ] this sovereign immunity bar by suing for injunctive or declaratory relief, rather than monetary relief." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 n. 1 (6th Cir. 2004) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). To determine whether a claim for such relief avoids sovereign immunity, "a court need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

The complaint in this case plainly states that the plaintiff is suing the defendant in his official capacity for declaratory and injunctive relief. Therefore, the plaintiff's complaint against the defendant in his official capacity survives an Eleventh Amendment challenge, but only as to those forms of relief.

██ The Eleventh Amendment bars suits for money damages against state officers sued in their official capacities. *John-*

*son*, 357 F.3d at 545. The plaintiff's claim against defendant Deloney for money damages is barred by the Eleventh Amendment. However, state defendants may be sued under section 1983 in their individual capacities for money damages. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir.2003). The plaintiff's complaint states that the defendant is being sued in his individual capacity for money damages. The Eleventh Amendment is no obstacle to that claim.

B. Individual capacity claim for damages

██ The defendant also argues that the plaintiff's money damages claim must be dismissed because the complaint does not allege sufficient facts to establish the defendant's personal liability. The Court agrees. The Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In order to establish personal liability in an action under 42 U.S.C. § 1983, a plaintiff must be able to demonstrate that "the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166, 105 S.Ct. 3099. In order to support a claim against the defendant in his personal capacity, therefore, the plaintiff must allege some action by defendant Deloney that deprived the plaintiff of a federal right.

That mission is impossible. The plaintiff seeks relief for damages that allegedly occurred between February 6, 2008 and September 13, 2011. However, Andrew Deloney was not appointed to the MLCC until June 10, 2011, and did not begin his duties until July 5 of that year. The transfer application was approved on June 30, 2011, before Mr. Deloney was on the job. The plaintiff, therefore, cannot state a plausible claim for money damages based on events

that occurred before the defendant took his seat on the MLCC, because the defendant cannot possibly have taken any action under the color of state law prior to that time.

■ Although the transfer was approved on June 30, it was not effectuated until September 13, 2011. The defendant insisted at oral argument that the delay was solely due to the plaintiff. The record does not contain any information to confirm that contention. Nonetheless, the Court believes that the plaintiff has not pleaded sufficient facts to state a claim for money damages against the defendant that is plausible on its face. The only facts that the plaintiff has alleged with respect to the defendant's conduct are that he is the chairman of the MLCC, he has acted under the color of state law in performing his duties as chairman, he has "caused the deprivation of Plaintiffs' [sic] First Amendment rights while acting under color of state law by enforcing" Michigan Compiled Laws § 436.1916, the defendant has enforced section 436.1916 "as the official policy of MLCC," and that the plaintiff has incurred damages as a result of the defendant's violations of the Constitution because it has paid a percentage of its sales to ABCDE Operating under a management agreement approved by the MLCC. Compl. at ¶¶ 6–10, 42, 43. The only factual allegations that can be described as more than a "formulaic recitation of the elements" of a section 1983 claim are the plaintiff's allegations that the defendant has enforced section 436.1916 and that the plaintiff has been forced to pay a percentage of its gross sales under its management agreement with ABCDE. But the bare allegation that the defendant has enforced the state statute as a general proposition, without any specific allegation of actions that this defendant has taken with respect to this plaintiff, is insufficient to establish a plausible claim of entitlement to relief.

The Court finds, therefore, that the claims against the defendant in his individual capacity must be dismissed.

■ In a related argument, the defendant contends that the City of Detroit must be joined as a necessary party, and if it is not, the case must be dismissed under Federal Rule of Civil Procedure 19(a). The defendant reasons that joinder of the City is necessary either because the Court cannot accord complete relief among the existing parties in the City's absence or because the failure to join the City leaves the defendant open to a substantial risk of incurring double, multiple, or inconsistent obligations because of the City's interest. The suggestion that the Court cannot entertain a facial challenge to the constitutionality of the state statute without the City of Detroit participating is unpersuasive, and the dismissal of the damages claim renders the balance of the argument moot.

### C. *Res Judicata*

■ Because the plaintiff's transferee, ABCDE Operating, LLC, brought an earlier action against the MLCC chairwoman concerning this same transfer that was dismissed with prejudice, the defendant believes that the doctrine of claim preclusion, also known as *res judicata,* bars the present action. The Court disagrees.

■ It is true that "when a court of competent jurisdiction enters a final judgment on the merits in an action, the parties and their privies are barred from relitigating in a subsequent action matters that were actually raised or might have been raised in the prior action." *Nathan v. Rowan,* 651 F.2d 1223, 1226 (6th Cir.1981). And a dismissal "with prejudice" can constitute an adjudication on the merits.

*Michigan Surgery Inv., LLC v. Arman,* 627 F.3d 572, 575 (6th Cir.2010) (stating that "a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judicata precludes further litigation" (quoting *United States v. One Tract of Real Property,* 95 F.3d 422, 425–26 (6th Cir.1996))). However, "[c]laim preclusion only arises ... in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity exists between the prior and present actions." *Mitchell v. Chapman,* 343 F.3d 811, 819 (6th Cir.2003). The defendant can not demonstrate all four elements in this case.

The defendant's claim preclusion argument fails because he has not demonstrated that the two actions were between the same parties or their privies. There is no question that the plaintiffs in the two cases are different; therefore, the question is whether the plaintiff was in privity with ABCDE Operating, LLC. "In the context of claim preclusion 'privity ... means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.'" *Mitchell,* 343 F.3d at 823 (quoting *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 481 (6th Cir. 1992)). The Supreme Court has outlined six exceptions to the general rule barring non-party preclusion: where a person "agrees to be bound by the determination of issues in an action between others," where there is a "pre-existing substantive legal relationship[ ] between the person to be bound and a party to the judgment," where a person was "adequately represented by someone with the same interests who was a party," where the nonparty "assumed control over the litigation in which [the] judgment was rendered," where "a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication," and where provided by a special statutory scheme. *Taylor v. Sturgell,* 553 U.S. 880, 893–95, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (internal citations and alterations omitted). The only exception addressed by the defendant is the designated representative or agent exception. However, the defendant does not provide any argument in support of his contention that the plaintiff is a proxy for ABCDE beyond an assertion that the plaintiff "clearly has no substantial interest in the alleged controversy and appears to be merely a nominal plaintiff trying advance [sic] the interests of" ABCDE Operating. Def.'s Mot. to Dismiss at 5. The plaintiff has asserted a claim for $500,000 in damages, measured by what it supposedly paid ABCDE. It is difficult to classify that as anything other than a "substantial interest" in the controversy. And since the money flowed away from the plaintiff to toward ABCDE, their interests *inter se* arguably were at odds. The defendant has provided no evidence other than supposition to support his claim that the plaintiff has been appointed by ABCDE or is acting as that company's representative. Nor is there any evidence that would suggest that any other exception applies. The defendant's claim preclusion argument fails.

### III.

In its motion for partial summary judgment, the plaintiff argues that it is entitled to a judgment as a matter of law declaring that Michigan Compiled Laws § 436.1916 is an unconstitutional prior restraint that violates the First Amendment, both on its face and as applied to it, because the stat-

ute does not (1) impose time limits for actions on permits, (2) mandate that the status quo be maintained during judicial review of an adverse decision, (3) guarantee accelerated judicial review of an adverse decision, or (4) contain nondiscretionary criteria to inform the decision to grant, deny, or transfer the permit. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties have not seriously contested the basic facts of the case as to the impact of the statute on the permit transfers. Where the material facts are mostly settled, as here, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir.2009).

The defendant resists the plaintiff's summary judgment motion, contending that the statute has adequate procedural safeguards and is constitutional. More importantly, however, the defendant argues that the plaintiff does not have standing to assert a constitutional challenge to the statute.

## A. Standing

■■■ Because the permits have been transferred, and the plaintiff's damages claims have no merit, the plaintiff's standing is properly questioned. Standing is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution. It is "the threshold question in every federal case."

*Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.' " *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915–16 (6th Cir.2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

■■■ There are three constitutional requirements for standing. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir.2007). "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision." *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■■■ The injury must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotations and citations omitted). "[A] plaintiff is not entitled to injunctive or declaratory relief '[a]bsent a sufficient likelihood that he will again be wronged in a similar way,' *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), unless the plaintiff is subject to 'continuing, present adverse effects,' *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)." *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir.2008); *see also Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir.2006) ("In the

context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir.1998))).

■ Causation is "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

The Sixth Circuit has stated that "[r]edressability ... requires that prospective relief will remove the harm, and the plaintiff must show that he personally would benefit in a tangible way from the court's intervention." *American Civil Liberties Union v. National Sec. Agency*, 493 F.3d 644, 670 (6th Cir.2007) (internal quotations and citations omitted). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Ibid.* (quotation omitted).

■ In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements. *See City of Cleveland*, 508 F.3d at 835. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators*, 291 F.3d at 916 (citing *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. 752). "Third, in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *Ibid.* "These additional restrictions

enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Ibid.* (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir.1991)).

To determine whether the plaintiff has standing to mount its challenges to the statute in question here, the Court must determine whether the challenged provisions of the statute have caused an injury-in-fact to the plaintiff that would be redressed by a favorable decision by this Court. The defendant argues that the plaintiff cannot bring an as-applied challenge to the statute, because it never applied for a topless activity permit, it does not allege that it intends to request another topless activity permit, it was not required to enter into a management agreement, it cannot establish a causal link between the management fees and the application of the statute, and it cannot demonstrate that a favorable decision from this Court would redress its harm.

The Court agrees that the plaintiff does not have standing to argue that the statute is unconstitutional as applied. Although the plaintiff has alleged a concrete harm—that it was unable to transfer its license and permits between January 31, 2007 and June 30, 2011—*see H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 617 (6th Cir.2009) (finding that plaintiffs were harmed when a city council failed to act on and ultimately denied an application to transfer a liquor license and topless activity permit), neither injunctive nor declaratory relief will help at this point. Prospective relief against the defendant in his official capacity cannot redress the plaintiff's injury. The plaintiff has not alleged that it intends to apply for another Topless Activity Permit, and it has none to transfer presently. A declaration that the statute is unconstitutional as applied to the plain-

tiff or an injunction barring the defendant from applying the statute to the plaintiff would confer no practical benefit upon the plaintiff.

■ The defendant's argument that the plaintiff has no standing to muster a facial attack on the statute is a different matter. The defendant believes that the plaintiff lacks standing because the plaintiff cannot assert a third party's First Amendment rights when the challenge is based on a lack of procedural safeguards, and the plaintiff has not attacked the statute on vagueness or overbreadth grounds. The defendant is incorrect.

■ The plaintiff contends that the requirement of a Topless Activity Permit is a prior restraint on expressive activity that is protected by the First Amendment. Prudential standing rules are somewhat relaxed in the First Amendment context. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 407 (6th Cir.1999). Normally, a party bringing a lawsuit must show an actual or threatened injury resulting from the alleged illegal action and may only assert a violation of its own rights. *Virginia v. American Booksellers Assoc., Inc.*, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). However, the freedom of expression and the unfettered exchange of ideas is considered the lifeblood which sustains a democracy. *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (stating that "[t]he protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people"). Therefore, where a law regulates speech based on content, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), contains a prior restraint of protected speech, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), chills the right of expression of third parties, *American Booksellers*, 484 U.S. at 392, 108 S.Ct. 636, or restricts the expression of others not before the court, *Members of the City Council for the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), third parties may wage a facial challenge to the offending law based on First Amendment rights. *American Booksellers*, 484 U.S. at 392–93, 108 S.Ct. 636. The Sixth Circuit has explained that unfettered censorship itself constitutes an injury-in-fact, stating that

> when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subjected to the law may challenge it facially without the necessity of applying for, and being denied, a license. Such a licensing requirement constitutes a prior restraint and may result in censorship. Thus, the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury.

*H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 617 (6th Cir.2009) (quoting *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir.2007)).

■ The relaxed standing rules are not limited to First Amendment challenges based only on vagueness and overbreadth grounds. The plaintiff alleges in its complaint that Michigan Compiled Laws § 436.1916 is an unconstitutional prior restraint because it does not (1) impose time limits for actions on permits, (2) mandate that the status quo be maintained during judicial review of an adverse decision, (3) guarantee accelerated judicial review of an adverse decision, or (4) contain nondiscre-

tionary criteria to inform the decision to grant or deny the permit. The plaintiff's allegation that the statute does not contain nondiscretionary criteria for granting or denying the permit is, essentially, an allegation that a government official has "unbridled discretion ... over whether to permit or deny expressive activity." *H.D.V.-Greektown, LLC,* 568 F.3d at 617. In such a situation, the licensing requirement combined with the unbridled discretion of the official constitutes an "actual injury," and the plaintiff has standing to mount a facial challenge to that aspect of the statute. Similarly, the Supreme Court has held that

> the failure to place limitations on the time within which a censorship board decisionmaker must make a determination of obscenity is a species of unbridled discretion. Thus, where a scheme creates a risk of delay such that every application of the statute creates an impermissible risk of suppression of ideas, we have permitted parties to bring facial challenges.

*FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596 (internal quotations and citations omitted). Therefore, the plaintiff may bring a facial challenge to the statute on the grounds stated.

### B. Constitutionality of the statute

The challenged statute, Michigan Compiled Laws § 436.1916(10), reads as follows:

 Before the issuance of any permit under this section, the on-premises licensee shall obtain the approval of all of the following:

(a) The commission.

(b) Except in cities with a population of 1,000,000 or more, the local legislative body of the jurisdiction within which the premises are located.

(c) The chief law enforcement officer of the jurisdiction within which the premises are located or the entity contractually designated to enforce the law in that jurisdiction.

Mich. Comp. Laws § 436.1916(10).

 Although the statute by its terms addresses "the issuance of ... permit[s]," the MLCC apparently believes the statute governs applications to transfer permits as well. Licensing schemes like the one described by the statute in this case have been held to constitute a prior restraint on protected expression. *Richland Bookmart, Inc. v. Knox County, Tenn.,* 555 F.3d 512, 532 (6th Cir.2009). To overcome the presumption of invalidity, a scheme for licensing sexually oriented businesses must incorporate two procedural safeguards. *See Deja Vu of Nashville [Inc. v. Metropolitan Government of Nashville ],* 274 F.3d [377,] 400–01 [ (6th Cir.2001) ]; *Nightclubs, Inc. [v. City of Paducah ],* 202 F.3d [884,] 890 [ (6th Cir.2000) ]. First, the decision whether to issue a license must be made within a specified—and brief—time period, and the status quo must be maintained during that period and during the course of any judicial review. See *Deja Vu of Nashville,* 274 F.3d at 400–01. Second, there must be an assurance that a judicial decision, if sought by the applicant, can be obtained seasonably. See *City of Littleton v. Z.J. Gifts D–4, L.L.C.,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004); *Deja Vu of Nashville,* 274 F.3d at 400–01. *Bronco's Entm't v. Charter Twp. of Van Buren,* 421 F.3d 440, 444 (6th Cir.2005). "[P]rompt judicial review and preservation of the status quo are the only constitutionally indispensable safeguards." *Odle v. Decatur County, Tenn.,* 421 F.3d 386, 390 (6th Cir.2005). "Where ... the regulation simply conditions the operation of adult

business on compliance with neutral and nondiscretionary criteria ... and does not seek to censor content, an adult business is not entitled to an unusually speedy judicial decision." *City of Littleton,* 541 U.S. at 784, 124 S.Ct. 2219; see also *Bronco's Entm't,* 421 F.3d at 444. "However, '[i]f a licensing scheme involves the application of subjective standards, rules requiring a speedy juridical decision may be necessary.'" *729, Inc. v. Kenton County Fiscal Court,* 515 F.3d 485, 495 (6th Cir.2008) (quoting *Bronco's Entm't,* 421 F.3d at 444).

### 1. Time Limits

The plaintiff argues that section 436.1916(10) is unconstitutional because neither it, nor any other provision of the Michigan Liquor Code, nor any administrative rule imposes time limits within which a permit application must be acted upon. The defendant argues that Michigan Compiled Laws § 436.1525(3) establishes a time limit of 90 days within which the MLCC must approve or deny a licensing request, and that it is the practice of the Commission to apply that limit to permit applications as well. The plaintiff responds that the time limit does not apply on its face to permit transfer applications, and that even if it is construed to apply to permit transfer applications, the time limit may be tolled by a number of other conditions, such as local approval. The plaintiff contends that the statute should dictate that any application not acted upon within a specific period of time will be deemed granted.

Michigan Compiled Laws § 436.1525(3) states that "the commission shall issue an initial or renewal license not later than 90 days after the applicant files a completed application." That period is tolled in two situations: when the Commission has sent a notice of a deficiency in the application and has not yet received the requested information, and when the Commission is waiting for third parties to complete designated tasks, such as

completion of construction or renovation of the licensed premises; mandated inspections by the commission or by any state, local, or federal agency; approval by the legislative body of a local unit of government; criminal history or criminal record checks; financial or court record checks; or other actions mandated by this act or rule or as otherwise mandated by law or local ordinance.

Mich. Comp. Laws § 436.1525(3)(a), (b). The defendant concedes that the 90–day time limit does not apply specifically to permit applications. However, the defendant also states that the Commission voluntarily applies the requirements of section 1525, including the time limits, when it processes permit applications.

The defendant's argument faces three major problems. First, although the defendant argues that the Commission applies the times limits in section 1525 to topless activity permit applications, the decision to do so is discretionary and not mandated by anything in the licensing scheme itself. Therefore, there is no guarantee that the policy will be followed consistently by the Commission, especially as its membership changes. In a facial challenge, a court must analyze a statute "as written" and "cannot depend on individuals enforcing [the statute] to do so in a manner that cures it of constitutional infirmities." *Redner v. Dean,* 29 F.3d 1495, 1501 (11th Cir.1994). The Sixth Circuit has noted that the statute does not contain time limits for the approval and issuance of a topless activity permit and has stated that in different factual circumstances "the absence of standards and time limits might warrant a judicial determination that the statute is an unconstitutional prior restraint." *Bronco's Entertainment,* 421 F.3d at 450.

Second, the ninety-day period is on the longer end of periods that have been found to satisfy the requirement for prompt licensing decisions. *See Big Dipper Entertainment, L.L.C. v. City of Warren,* 641 F.3d 715, 720 (6th Cir.2011) (24–day period for acting on application satisfies the requirement); *Bronco's Entertainment,* 421 F.3d at 448 (holding that a 44–day period for acting on a licensing application was sufficiently brief); *Doctor John's, Inc. v. City of Roy,* 465 F.3d 1150, 1162 (10th Cir.2006) (approving of a licensing scheme that mandated approval or denial within 40 days); *Café Erotica of Florida, Inc. v. St. Johns County,* 360 F.3d 1274, 1283 (11th Cir.2004) (finding 30–day limit acceptable); *but see Wolff v. City of Monticello,* 803 F.Supp. 1568, 1574 (D.Minn.1992) (finding a 90–day limit acceptable). Although a 90–day limit is not entirely unacceptable, when the longer time limit combines with the numerous ways in which that limit might be tolled, the time period no longer can be characterized as "brief," as required by the Constitution.

Third, the Supreme Court has found that a similar licensing scheme failed to satisfy the Constitution. In *FW/PBS Inc. v. City of Dallas,* the Court held that a licensing scheme that imposed a thirty-day time limit for issuing decisions on applications but also mandated that licenses could not issue until the premises had been inspected failed to provide an effective limitation on the time in which a decision could be made because the ordinance did not place any time limits on when the city would inspect the business. 493 U.S. at 227, 110 S.Ct. 596. Similarly, section 436.1916(10)(b) and (c) require approval of the local jurisdiction where the business is located and its chief law enforcement official before the issuance of a permit. Section 436.1525(3)(b) tolls the ninety-day time limit while approval by the local juris-diction is pending but does not contain a corresponding limitation on the time for local action. That problem manifested itself in this very case. The City of Detroit had to be sued in order to move it to act, and even then the court ultimately "deemed" the transfer approved by the local governmental unit. The time for all of that cannot be considered "brief" by any measure. That problem was systemic and derives from the language of the statute itself.

The defendant offers no counter to any of these arguments. Because the language of the statute does not provide a time limit in which a transfer application must be decided upon and because the statute presents the possibility of indefinite delay prior to decision-making, the Court must find the statute is unconstitutional on that basis.

### 2. *Status Quo*

The Supreme Court has also required that the *status quo* be maintained during the pendency of an application and judicial review. *Freedman v. Maryland,* 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The plaintiff argues that the statute and administrative rules do not mandate that the *status quo* be maintained. The defendant argues that there is no requirement that the statute explicitly state that the *status quo* be maintained, as long as the practical effect of the statute is that the *status quo* is maintained.

There are only two categories of businesses that can apply for a topless activity permit. First, businesses that have liquor licenses may apply for a topless activity permit. Those defendants would be permitted to continue to serve alcohol but would not be permitted to present nude dancing. Second, businesses seeking both a liquor license and a topless activity permit would not operate while the application

is pending. The *status quo* requirement does not mandate that an applicant be permitted to operate pending judicial review. As the defendant notes, "[t]he status quo for a business seeking a permit to begin operating a sexually oriented business ... is non-operation." *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 225 (6th Cir.1995). The Sixth Circuit has held that the *status quo* requirement, in the case of a permit denial, "does not require more" than permitting sexually oriented businesses already in operation when the statute takes effect to continue operating while their applications are pending. *Ibid.* The plaintiff's challenge on this point fails.

### 3. Objective and Nondiscretionary Criteria

■ The plaintiff also argues that the statute and rules governing the issuance or transfer of a Topless Activity Permit do not contain explicit and objective criteria. The plaintiff maintains, correctly, that section 436.1916(10) contains no criteria at all. It also contends that a corresponding regulation, Michigan Administrative Rule (AR) 436.1105(2) and (3), is not applicable to transfer applications, contains criteria that are wholly subjective, and confers unbridled discretion on the government. The defendant argues that section 436.1916(10) does not seek to censor topless activity, and the Commission's criteria for considering a permit are neutral and nondiscretionary because they only require a review of the general qualifications of the applicant.

Michigan AR 436.1105(2) states:

The commission shall consider all of the following factors in determining whether an applicant may be issued a license or permit:

(a) The applicant's management experience in the alcoholic liquor business.

(b) The applicant's general management experience.

(c) The applicant's general business reputation.

(d) The opinions of the local residents, local legislative body, or local law enforcement agency with regard to the proposed business.

(e) The applicant's moral character.

(f) The order in which the competing initial application forms are submitted to the commission . . . .

(g) Past convictions of the applicant for any of the following:

(i) A felony.

(ii) A crime involving the excessive use of alcoholic liquor.

(iii) A crime involving any of the following:

(a) Gambling.

(b) Prostitution.

(c) Weapons.

(d) Violence.

(e) Tax evasion.

(f) Fraudulent activity.

(g) Controlled substances.

(iv) A misdemeanor of such a nature that it may impair the ability of the applicant to operate a licensed business in a safe and competent manner.

(v) Sentencing for any of the offenses specified in this subrule after a plea of nolo contendere.

(h) The applicant's excessive use of alcoholic liquor.

(i) The effects that the issuance of a license would have on the economic development of the area.

(j) The effects that the issuance of a license would have on the health, welfare, and safety of the general public.

Subsection (3) of that regulation states:

An application for a new license, an application for any transfer of interest in an existing license, or an application for a transfer of location of an existing license shall be denied if the commission is notified, in writing, that the application does not meet all appropriate state and local building, plumbing, zoning, fire, sanitation, and health laws and ordinances as certified to the commission by the appropriate law enforcement officials. The commission may accept a temporary or permanent certificate of occupancy for public accommodation issued by the appropriate officials as evidence of compliance with this subrule.

Mich. Admin. R. 436.1105(3).

Some of the factors in these rules plainly are objective and nondiscretionary. But even the specific provisions requiring consideration of past convictions for designated crimes state that the Commission must "consider" the applicant's prior criminal record; it does not state that having those convictions is disqualifying. Moreover, the other factors listed in the Rule are discretionary and cannot be described plausibly as objective. The "opinions of the local residents, local legislative body, or local law enforcement agency" call for a subjective assessment. The applicant's "moral character" and "general business reputation" are not factors that are susceptible to objective measurement. Nor does the Rule describe an objective measure by which an applicant's alcohol consumption could be determined to be "excessive." In addition, the Rule describes those items as "factors to be considered" rather than as nondiscretionary qualifications or disqualifications. There is nothing in the Rule preventing the Commission from exercising its discretion to consider additional factors or to weigh the various factors differently in different cases.

The defendant compares this case to *City of Littleton v. Z.J. Gifts D–4, LLC,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004), in which the Supreme Court held that a regulation applicable to an adult business prescribed neutral and nondiscretionary criteria and did not seek to censor content. But comparing that case to the present one only demonstrates the shortcomings of Michigan's statutory scheme. In *City of Littleton,* the ordinance stated that a license "shall" be denied if the applicant was underage, provided false information, had an adult business license suspended or revoked in the previous year, operated an adult business determined to be a public nuisance in the previous year, was a corporation not authorized to do business in the state, had not obtained a sales tax license, or had been convicted of certain crimes in the past five years. *City of Littleton,* 541 U.S. at 783, 124 S.Ct. 2219. All those criteria are nondiscretionary ("shall" be denied), and are plainly objective. The factors in the Michigan rule more closely resemble those that the Sixth Circuit has found to be nonobjective. In *Bronco's Entertainment,* the court found that an ordinance that required a judgment as to whether an applicant "has demonstrated an inability to operate or manage a sexually oriented business in a peaceful and law-abiding manner" and an "assessment of the applicant's 'fitness' by the chief of police" were discretionary and therefore not objective. *Bronco's Entertainment,* 421 F.3d at 449; *see also East Brooks Books,* 48 F.3d at 227 (finding that a nearly identical provision vested "unbridled discretion" in the hands of the chief of police). Similarly, here, the factors vest nearly unbridled discretion in the Commission to determine the appli-

cant's moral character, business acumen, and reputation in the community. The Michigan licensing scheme does not "appl[y] reasonably objective, nondiscretionary criteria"; instead, it contains "subjective standards" that are not permitted by the First Amendment when a government imposes a prior restraint. *City of Littleton,* 541 U.S. at 782, 124 S.Ct. 2219.

### 4. Accelerated Judicial Review

 The plaintiff argues that accelerated judicial review is required when a licensing scheme fails to impose time limits and fails to incorporate reasonably nondiscretionary, objective criteria to licensing decisions. The defendant agrees that provisions for accelerated judicial review are necessary in the absence of objective, nondiscretionary criteria. The Sixth Circuit has repeatedly held that " '[i]f a licensing scheme involves the application of subjective standards, rules requiring a speedy judicial decision may be necessary.' " *729, Inc.,* 515 F.3d at 495 (quoting *Bronco's Entm't,* 421 F.3d at 444).

 Because the licensing scheme in this case employs subjective standards, it "requires special rules that guarantee an 'unusually speedy judicial decision.' " *Bronco's Entertainment,* 421 F.3d at 449 (quoting *City of Littleton,* 541 U.S. at 784, 124 S.Ct. 2219). There are no special rules in the MLCC permit-issuing scheme. The defendant does not even attempt to argue that such rules exist, instead pointing to the general right to appeal an administrative decision contained in the Michigan Revised Judicature Act and ask for accelerated review. *See* Mich. Comp. L. § 600.631; Mich Ct. R. 7.105(L). Moreover, in the absence of the requisite procedural safeguards, specifically a reasonable limit on the time within which a licensor must decided whether to issue a license, *see FW/PBS, Inc.,* 493 U.S. at 230, 110 S.Ct. 596 (citing *Bantam Books, Inc. v.*

*Sullivan,* 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)), "the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the licensor rather than the exhibitor." *Deja Vu of Nashville,* 274 F.3d at 400–01 (citing *Freedman,* 380 U.S. at 57, 85 S.Ct. 734). Because the licensing scheme does not apply reasonably objective nondiscretionary criteria and does not incorporate special rules guaranteeing an unusually speedy judicial decision, the permitting scheme is unconstitutional on that ground as well.

### IV.

The Court concludes that all of the plaintiff's claims against the defendant in his individual capacity must be dismissed, and the plaintiff does not have standing to assert that the statute governing the issuance and transfers of permits is unconstitutional as applied. However, the plaintiff has standing to argue that Michigan Compiled Laws § 436.1916(10) is unconstitutional in its face. The Court finds that the statute is unconstitutional because it does not impose reasonable time limits for actions on permits, guarantee accelerated judicial review of an adverse decision, and contain nondiscretionary criteria to inform the decision to grant, deny, or transfer the permit.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. # 6] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the plaintiff's motion for partial summary judgment [dkt. # 12] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Michigan Compiled Laws § 436.1916(10) is declared to violate the First Amendment and therefore is repugnant to the Constitution.

It is further **ORDERED** that the defendant and all those in active concert and participation with him who receive actual notice of this order are **RESTRAINED AND ENJOINED** from enforcing Michigan Compiled Laws § 436.1916(10).

It is further **ORDERED** that the remaining portions of the plaintiff's complaint are **DISMISSED WITH PREJUDICE.**