**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EVA MOORE; BROOKE SHAW; CHERRELLE DAVIS; NINA DAVIS, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*,

v.

JOHN URQUHART, in his official capacity as King County Sheriff, *Defendant-Appellee.*

No. 16-36086

D.C. No. 2:16-cv-01123-TSZ

OPINION

Appeal from the United States District Court for the Western District of Washington Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted June 15, 2018 Seattle, Washington

Filed August 16, 2018

Before: Milan D. Smith, Jr. and Paul J. Watford, Circuit Judges, and Douglas L. Rayes,[*] District Judge.

Opinion by Judge Watford

---

[*] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Constitutional Law / Mootness / Landlord-Tenant

The panel reversed the district court's dismissal of a class action challenging the constitutionality of Washington Revised Code § 59.18.375 ("§ 375"), which allows tenants to be evicted from their homes without a court hearing.

Plaintiffs rent an apartment in King County, Washington, and their landlord filed an unlawful detainer action seeking to evict them under Washington's Residential Landlord-Tenant Act.   Washington Revised Code § 59.18.375 ("§ 375") applies when the basis for eviction is non-payment of rent: The landlord must serve the tenant with a written notice advising the tenant that the landlord is entitled to an eviction order without a hearing unless the tenant takes one of two actions, either paying the amount the landlord claims is owed or disputing the amount in a sworn written statement.  If the tenant does not take either of these actions, then the landlord is entitled to a writ of restitution.

The panel held that the original plaintiffs had standing to sue at the time they filed this action, which is the relevant time frame for analyzing Article III standing.  The panel also held that plaintiffs who were subsequently added to the action did not have standing to sue because their circumstances left their prospects of injury too speculative to support Article III standing.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

With respect to mootness, the original plaintiffs conceded that their claim for declaratory and injunctive relief had become moot because the writ of restitution expired, and they eventually settled their dispute with their landlord. The panel held that one of the mootness exceptions applied, however, because the dispute was capable of repetition, yet evading review. The panel held that the otherwise moot dispute remained live for Article III purposes.

Turning to the merits, the panel held that the district court dismissed plaintiffs' action based on a misreading of the statute in question when the district court held that § 375 required state courts to schedule a hearing in all cases before a writ of restitution could be issued. The panel held that the text of § 375 makes clear that a hearing is not mandatory.

The panel held that the *Rooker-Feldman* doctrine did not apply here because plaintiffs were not asking the district court to review and reject the judgment entered against them in state court.

The panel held that the Sheriff's two alternative arguments for affirmance of the district court's judgment lacked merit. First, the panel held that the contention that plaintiffs' action must be brought under 42 U.S.C. § 1983 was without merit because plaintiffs sought to recover only declaratory and injunctive relief against the Sheriff in his official capacity, and to obtain that relief plaintiffs did not need a statutory cause of action. The panel held that the plaintiffs could rely on the judge-made cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908); and the Sheriff was a proper defendant in an *Ex parte Young* suit seeking to enjoin enforcement of § 375.

Second, the panel also rejected the Sheriff's argument that he was entitled to judicial immunity. The panel held that common law judicial immunity was of no help to the Sheriff because it only barred suits seeking damages, and it did not preclude a court from granting declaratory or injunctive relief. The panel also held that the expanded scope of judicial immunity afforded under 42 U.S.C. § 1983, as amended by the Federal Courts Improvement Act of 1996, did not limit injunctive relief against an executive branch officer enforcing a court order, and the Sheriff was not entitled to immunity from plaintiffs' request for declaratory and injunctive relief.

The panel held that Sheriff's remaining arguments were without merit. The panel reversed, and remanded for further proceedings.

## COUNSEL

Toby J. Marshall (argued) and Elizabeth A. Adams, Terrell Marshall Law Group PLLC, Seattle, Washington; Rory O'Sullivan, King County Bar Association Housing Justice Project, Seattle, Washington; for Plaintiffs-Appellants.

David J. Hackett (argued) Senior Deputy Prosecuting Attorney, King County Prosecuting Attorney, Seattle, Washington, for Defendant-Appellee.

Jeffrey T. Even, Deputy Solicitor General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Amicus Curiae State of Washington.

## OPINION

WATFORD, Circuit Judge:

This is a class action challenging the constitutionality of a Washington statute that allows tenants to be evicted from their homes without a court hearing. Plaintiffs seek declaratory and injunctive relief against the Sheriff of King County, whose office enforces the challenged statute by executing the eviction orders. The district court dismissed the action with prejudice on grounds that the Sheriff rightly does not attempt to defend on appeal. We conclude that the Sheriff's alternative arguments for affirmance also lack merit and therefore reverse and remand for further proceedings.

I

The plaintiffs in this action, Eva Moore and Brooke Shaw, rent an apartment together in King County, Washington. (We will ignore for now a second set of plaintiffs who lack standing to bring suit for reasons explained a bit later.) In May 2016, after plaintiffs fell behind on their rent, their landlord filed an unlawful detainer action seeking to evict them.

Under Washington's Residential Landlord-Tenant Act, Wash. Rev. Code § 59.18.010 *et seq.*, a landlord has two distinct pathways to pursue eviction: one that is available in all cases, and a second, alternative procedure available only when the ground for eviction is non-payment of rent. Both procedures start out the same way, with the landlord filing an action in superior court and serving the tenant with a summons and complaint. §§ 59.12.070, 59.18.365. If the landlord pursues the generally applicable procedure, the

landlord must request, and the court must schedule, a "show cause" hearing at which the tenant can appear and present any legal or equitable defenses available to contest her eviction. §§ 59.18.370, .380. If the tenant fails to show up for the hearing, or if the court rejects the tenant's asserted defenses at the hearing, the court will issue a "writ of restitution" directing the county sheriff to restore possession of the property to the landlord. Under this procedure, a hearing will always be scheduled before a writ of restitution is issued.

The second procedure, the one at issue here, is authorized by Washington Revised Code § 59.18.375, which for ease of reference we will refer to as § 375. As noted, it applies only when the basis for eviction is non-payment of rent. Under § 375, the landlord serves the tenant with a written notice, the terms of which are dictated by statute. The notice must advise the tenant that "[t]he landlord is entitled to an order from the court directing the sheriff to evict you without a hearing," unless the tenant takes one of two actions. § 59.18.375(7)(f). The two actions are spelled out as follows:

### YOU MUST DO THE FOLLOWING BY THE DEADLINE DATE:

1. Pay into the court registry the amount your landlord claims you owe set forth above and continue paying into the court registry the monthly rent as it becomes due while this lawsuit is pending;

**OR**

2. If you deny that you owe the amount set forth above and you do not want to be evicted

immediately without a hearing, you must file with the clerk of the court a written statement signed and sworn under penalty of perjury that sets forth why you do not owe that amount.

*Id.*

If the tenant fails to take either of these actions within the stated deadline, the landlord is entitled to "immediate issuance of a writ of restitution without further notice to the [tenant]." § 59.18.375(4). No hearing is required under § 375, although a hearing will be held if the tenant requests one. *Id.* The statutorily prescribed notice does not advise tenants of their right to request a hearing.

The landlord in this case chose to evict plaintiffs using the procedure authorized by § 375. In late May 2016, the landlord served them with the notice just described. It gave plaintiffs until June 6, 2016, to take one of the two specified actions. They did not have the $3,300 the landlord claimed they owed, so they could not pay that amount into the court registry. Nor could they truthfully assert that they did not owe the $3,300, so they took no action within the stated deadline. On June 21, 2016, without holding a hearing, the court issued a writ of restitution directing the Sheriff to evict plaintiffs from their apartment. On June 27, 2016, before the Sheriff could execute the writ, plaintiffs filed a motion to stay its execution, which the court granted.

On July 5, 2016, plaintiffs filed this action in state court challenging the constitutionality of § 375. In substance, they contend that § 375 violates the Due Process Clause of the Fourteenth Amendment because it authorizes a tenant's

eviction without requiring a court hearing beforehand. Plaintiffs filed an amended complaint later in July, which is the operative complaint here. The amended complaint added an additional set of plaintiffs, Cherrelle Davis and Nina Davis, and restyled the action as a class action brought on behalf of "[a]ll tenants who have been or will be served by the King County Sheriff's Office with a writ of restitution issued pursuant to RCW 59.18.375 on or after July 18, 2013." The amended complaint requests a declaration that § 375 is facially unconstitutional and an injunction prohibiting the Sheriff from enforcing writs of restitution issued pursuant to the statute. The Sheriff removed the action to federal court.

Because plaintiffs' action challenges the constitutionality of a state statute, the district court invited the State of Washington to intervene to defend the statute. *See* 28 U.S.C. § 2403(b). Before the State entered an appearance, though, the district court granted the Sheriff's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The court held that § 375 does not violate the Due Process Clause because, contrary to plaintiffs' contention, the statute actually does require a hearing in all cases before a writ of restitution may be issued. Under that reading of the statute, the court concluded, plaintiffs had not stated a claim that § 375 was unconstitutional and any further attempt to amend the complaint would be futile. The court accordingly dismissed the action with prejudice and denied plaintiffs' motion for class certification as moot.

II

Our first order of business is to determine whether we have jurisdiction to hear plaintiffs' appeal. The Sheriff argues that we do not, both because plaintiffs lack standing to

sue and because the case is now moot. We find both arguments unpersuasive.

The original plaintiffs, Moore and Shaw, had standing to sue at the time they filed this action, which is the relevant time frame for analyzing Article III standing. *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008). When they filed suit on July 5, 2016, Moore and Shaw had been served with a writ of restitution issued under § 375. The writ had not been executed and had not yet expired—it remained valid until July 21, 2016. Plaintiffs therefore plausibly alleged: (1) that they faced a concrete, particularized, and imminent injury (being evicted from their home); (2) that the injury was fairly traceable to the conduct they sought to enjoin (the Sheriff's execution of a writ of restitution issued under § 375); and (3) that the injury would likely be redressed by a favorable ruling (invalidating § 375 would void the writ authorizing their eviction). Those allegations suffice to establish Article III standing. *See id.* at 733; *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 446–47 (9th Cir. 1994).

However, we agree with the Sheriff that neither of the Davis plaintiffs had standing to sue when they were added to the action toward the end of July. By then, a state court judge had not only issued a writ of restitution authorizing their eviction under § 375; the Sheriff had executed the writ and evicted them, rendering them homeless as a result. A favorable ruling invalidating § 375 would not redress the injury they had already suffered, as the amended complaint seeks only declaratory and prospective injunctive relief, not damages. (The amended complaint does request nominal damages, but at oral argument plaintiffs' counsel disclaimed any intent to pursue such damages.) It is true that at some

point in the future the Davises might find another apartment, might again be unable to pay the rent, and thus might again face eviction through proceedings brought under § 375. But at the time they were added as plaintiffs, the Davises were not even renting an apartment. That circumstance left their prospects of future injury too speculative to support Article III standing. *See Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

With respect to mootness, Moore and Shaw concede that their claims for declaratory and injunctive relief have become moot. The writ of restitution has long since expired, and they eventually settled the dispute with their landlord over unpaid back rent. But there are exceptions to the mootness doctrine, one of which provides that an otherwise moot dispute remains live for Article III purposes if it is "capable of repetition, yet evading review." *Davis*, 554 U.S. at 735 (internal quotation marks omitted). This exception applies if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal quotation marks omitted).

Both prongs are satisfied here. First, the challenged action—issuance and execution of writs of restitution under § 375—unfolds over a very short period of time. After a tenant receives the notice required under § 375, her response is typically due within seven days. *See* Wash. Rev. Code § 59.18.375(7)(a). If the tenant does not take one of the two specified actions before the deadline passes, the landlord is entitled to "immediate" issuance of the writ, § 59.18.375(4), and the writ is enforceable for only a limited period of time,

typically 30 days. A facial challenge to § 375 cannot be fully litigated before the underlying dispute becomes moot, because in the interim the writ will either be executed or expire by its own terms. While the tenant may be able to stay the writ's execution, *see id.*, the writ will nevertheless expire within a matter of weeks, and there is no indication in the statutory scheme that the writ's *expiration* can be stayed. *See Greenpeace Action v. Franklin*, 14 F.3d 1324, 1330 (9th Cir. 1992). Thus, the action will remain live for only one or two months, a period far too short to enable federal court review. *See Wildwest Institute v. Kurth*, 855 F.3d 995, 1003 (9th Cir. 2017) (one or two *years* is typically too short a period to permit federal court review).

Second, it is reasonable to expect that at some point in the future Moore and Shaw will again fall behind on their rent and thus could again be subject to eviction proceedings under § 375. Unlike the Davises, Moore and Shaw continue to live in the same apartment and pay rent to the same landlord, who we know is willing to invoke § 375's procedures to evict non-paying tenants. Nothing in the record suggests that Moore and Shaw's financial circumstances have dramatically improved, so they remain as vulnerable as before to the sorts of hardships (health issues, loss of employment, etc.) that left them unable to make ends meet back in June 2016. As the Supreme Court has acknowledged, the likelihood of future harm required to avoid mootness is not as high as that required to establish standing in the first instance. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190–91 (2000). In these circumstances, it is reasonably likely that Moore and Shaw will once again find themselves in need of the same declaratory and injunctive relief that they sought at the outset of this litigation.

The Sheriff argues that, even if the plaintiffs have shown that this dispute is capable of repetition, they have not shown that it will evade review because plaintiffs could always raise their constitutional challenge to § 375 in the eviction proceedings themselves. But the availability of review in state court is not relevant to determining whether Article III's requirements are satisfied. A dispute evades review for purposes of the "capable of repetition, yet evading review" exception if the challenged action will run its course before the matter can be fully litigated in *federal court*, including review on appeal. *See Hubbart v. Knapp*, 379 F.3d 773, 778 (9th Cir. 2004). That is the situation here.

III

Turning now to the merits, we take up first the district court's reasons for dismissing the action and then address the alternative arguments raised by the Sheriff.

A

The district court dismissed plaintiffs' action based on a misreading of the statute in question. The court held that § 375 requires state courts to schedule a hearing in all cases before a writ of restitution may be issued. The Sheriff does not attempt to defend the district court's reading of the statute, and the State of Washington, appearing as *amicus curiae*, affirmatively argues that the court misconstrued the statute. We agree that the text of § 375 precludes the district court's interpretation.

The district court correctly held that, under Washington's Residential Landlord-Tenant Act, a hearing is ordinarily required before a writ of restitution may be issued. *See*

Wash. Rev. Code §§ 59.18.370, .380. But the court erred by assuming that the same hearing requirement applies in proceedings under § 375. It does not. Section 375 provides an alternative, "summary method" of eviction that may be invoked only when the basis for eviction is non-payment of rent. *Duvall Highlands LLC v. Elwell*, 19 P.3d 1051, 1053 (Wash. Ct. App. 2001). When a landlord proceeds under § 375, the landlord need not request (and the court need not schedule) a hearing at which the tenant may appear to present whatever legal or equitable defenses she may have. Instead, the landlord simply serves the tenant with the notice required under § 375. If the tenant fails to take either of the actions specified in the notice, the landlord is entitled, without more, to "immediate issuance of a writ of restitution." Wash. Rev. Code § 59.18.375(4). The text of § 375, by dictating the contents of the notice that tenants must receive, makes clear that a hearing is not mandatory. The notice advises the tenant that if she fails to take either of the specified actions, the landlord will be "entitled to an order from the court directing the sheriff to evict you *without a hearing*." § 59.18.375(7)(f) (emphasis added). The district court erred by holding that this provision requires a hearing in all cases.

None of this is to say that a hearing is *prohibited* in proceedings under § 375. As mentioned earlier, the statute provides that a "show cause" hearing will be held if the tenant requests one. Indeed, even if a writ of restitution has already been issued, the tenant can still request "a hearing on the merits and an immediate stay of the writ of restitution." § 59.18.375(4). The very presence of this provision, of course, confirms that a writ of restitution may be issued under § 375 without a hearing having been held beforehand.

The district court relied heavily on *Housing Authority of the City of Pasco and Franklin County v. Pleasant*, 109 P.3d 422 (Wash. Ct. App. 2005), where the court stated that the Residential Landlord-Tenant Act creates a "mandatory duty" to hold a hearing before a writ of restitution is issued. *Id.* at 427. But the court in that case was interpreting the statutory provisions governing the generally applicable eviction procedure created by §§ 59.18.370 and 59.18.380, under which a hearing *is* required. The court did not construe the separate eviction procedure authorized by § 375, a provision inapplicable on the facts at issue there because the tenant's eviction was based on lease violations and criminal activity, not on failure to pay rent. *Id.* at 424. We do not read the decision in *Pleasant* as holding (or even suggesting) that the mandatory hearing requirement applicable under §§ 59.18.370 and 59.18.380 applies in proceedings brought under § 375.

In dismissing plaintiffs' action with prejudice, the district court also stated that the action "seems to be in the nature of mandamus," a form of relief the court believed it lacked jurisdiction to grant. The court's statement was predicated on its erroneous reading of § 375. Having held that § 375 requires a hearing in all cases, the court construed plaintiffs' complaint as requesting an injunction compelling the judges of King County Superior Court to conduct the hearings that § 375 supposedly requires. But plaintiffs seek no such relief. They have instead requested an injunction prohibiting the Sheriff from enforcing a state statute that is allegedly unconstitutional because it does not require a hearing. As we explain below, that is a form of relief the district court has jurisdiction to grant.

Finally, the district court suggested that this case might be barred by the *Rooker-Feldman* doctrine, which precludes federal district courts from exercising jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The doctrine does not apply here because plaintiffs are not asking the district court to review and reject the judgment entered against them in state court. The state court judgment merely resolved the landlord's unlawful detainer action; it did not resolve whether § 375 is facially constitutional, the challenge plaintiffs seek to litigate here. Thus, rather than seek to overturn the state court judgment itself, plaintiffs have instead challenged the facial validity of the statute under which their state court proceedings were conducted, an independent claim that "encounters no *Rooker-Feldman* shoal." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). As the Court noted in *Skinner*, "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.* Even if plaintiffs could have litigated their constitutional challenge in the unlawful detainer proceedings, as the district court appeared to assume, that fact might be relevant to preclusion analysis, but it would not trigger application of the *Rooker-Feldman* doctrine. *See id.* at 533 n.11 ("*Rooker-Feldman* is not simply preclusion by another name.") (internal quotation marks omitted).[1]

---

[1] Plaintiffs' action is not barred by claim preclusion, as the Sheriff incorrectly asserts, because Washington law (which determines the preclusive effect of the judgment here, *see Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982)) does not grant a judgment

B

The Sheriff raises two principal arguments in defense of the district court's judgment. First, he contends that plaintiffs' action must be brought, if at all, under 42 U.S.C. § 1983 and that the amended complaint fails to state a viable claim under that statute. Second, the Sheriff argues that plaintiffs' action is barred in any event by the doctrine of judicial immunity.

The Sheriff's first argument is plainly without merit. Plaintiffs would be required to proceed under 42 U.S.C. § 1983 if they sought to recover money damages. But they are seeking only declaratory and injunctive relief against the Sheriff in his official capacity—a declaration that § 375 is facially unconstitutional and an injunction barring him from enforcing writs of restitution issued under the statute. To obtain that relief, plaintiffs do not need a statutory cause of action. They can rely on the judge-made cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), which permits courts of equity to enjoin enforcement of state statutes that violate the Constitution or conflict with other federal laws. *See Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015).

Congress may enact statutes with a detailed remedial scheme that explicitly or implicitly displaces the judge-made

claim preclusive effect unless the parties to the first suit were identical to, or in privity with, those in the second. *See Spokane Research & Defense Fund v. City of Spokane*, 117 P.3d 1117, 1123 (Wash. 2005); *Landry v. Luscher*, 976 P.2d 1274, 1277–78 (Wash. Ct. App. 1999). The Sheriff is not in privity with Moore and Shaw's landlord, the opposing party in the unlawful detainer proceedings.

equitable remedy available under *Ex parte Young*. In such cases, a plaintiff must rely on a statutory cause of action in order to bring suit. *See, e.g.*, *id.* at 1385–86; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 75–76 (1996). But Congress has enacted no statute that would foreclose an *Ex parte Young* action to enjoin enforcement of an allegedly unconstitutional state law like § 375. The only statute the Sheriff identifies, 42 U.S.C. § 1983, at most imposes limitations on the remedies available in certain actions brought against judicial officers, as we discuss below. Section 1983 does not displace the availability of an *Ex parte Young* action altogether.

Actions under *Ex parte Young* can be brought against both state and county officials, *see Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004), so it is unnecessary for us to resolve the parties' dispute over whether the Sheriff acts on behalf of King County or the State of Washington when he executes writs of restitution. The only issue is whether the Sheriff has at least "some connection" to enforcement of the allegedly unconstitutional eviction procedure authorized by § 375. *Id.* at 919. He does, because Washington law assigns county sheriffs the power and duty to serve and execute writs of restitution issued under § 375. Wash. Rev. Code § 59.18.390. The Sheriff's role in executing those writs makes him a proper defendant in an *Ex parte Young* suit seeking to enjoin enforcement of § 375.

The Sheriff's second argument is that, even if plaintiffs have a viable cause of action under *Ex parte Young*, he is nonetheless entitled to judicial immunity for his conduct. Judicial immunity is a common law doctrine developed to protect judicial independence. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). It bars suits against judges, and other officials

who exercise "discretionary judgment" similar to that of judges, when the plaintiff's suit is predicated on actions taken in the judge's judicial capacity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). The Sheriff is correct that a similar immunity has also been extended to protect non-judicial officers, like sheriffs, who are sued merely for carrying out a non-discretionary duty to execute lawfully issued court orders. *See, e.g.*, *Engebretson v. Mahoney*, 724 F.3d 1034, 1039–40 (9th Cir. 2013); *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009); *Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 765 (9th Cir. 1987). In such cases, if the judicial officer who issued the order is entitled to immunity, so too is the executive officer who did nothing more than execute the order. The executive officer's immunity (sometimes called "quasi-judicial" immunity) is derivative of the judge's own immunity. *Smith v. City of Hammond*, 388 F.3d 304, 306–07 (7th Cir. 2004); *Coverdell*, 834 F.2d at 765.

Common law judicial immunity is of no help to the Sheriff in this action, for it only bars suits seeking damages. It does not preclude a court from granting declaratory or injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Because the King County Superior Court judges who issue writs of restitution would not be entitled to common law judicial immunity in a suit seeking declaratory and injunctive relief, neither is the Sheriff.

In 1996, Congress amended 42 U.S.C. § 1983 to limit the circumstances in which injunctive relief may be granted against judges. As a statutory matter, Congress expanded the scope of judicial immunity by providing that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996 (FCIA), Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983). Section 1983 (as amended by the FCIA) therefore provides judicial officers immunity from injunctive relief even when the common law would not.

The Sheriff contends that he is covered by the expanded scope of judicial immunity afforded under § 1983. We will assume without deciding that the limitations on injunctive relief Congress imposed in the FCIA generally apply in actions brought under *Ex parte Young*. We nonetheless conclude that Congress did not intend these limitations to apply in cases like this one.

The text of the FCIA bars injunctive relief against "a judicial officer" for acts or omissions taken in the officer's "judicial capacity." That language is closely associated with the immunity extended to judges and their equivalents, not with the immunity afforded to officers who execute court orders. Congress chose in the FCIA to focus on judicial officers acting in a judicial capacity because it sought to "restore[] the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522 (1984)." S. Rep. No. 104-366, at 36 (1996). In that case, the Court held that common law "judicial immunity is not a bar to prospective injunctive relief *against a judicial officer acting in her judicial capacity*." 466 U.S. at 541–42 (emphasis added). The case involved a state court judge, not a law enforcement official.

As Congress was undoubtedly aware, use of the term "judicial" implicates the familiar three-branch structure of

government.  The judicial branch encompasses officials other than those with the title "judge," such as court clerks.  *See Shadwick v. City of Tampa*, 407 U.S. 345, 351 (1972).  But the Sheriff is a quintessential executive branch official.  *See Chisom v. Roemer*, 501 U.S. 380, 399 (1991) (referring to sheriffs as "executive officers").  And exercising the power to break down someone's door, enter their home, and carry their belongings to the sidewalk is a quintessentially executive function, not a judicial one.  Indeed, it is difficult to see how a law enforcement official carrying out a judge's order could be deemed to have acted in a "judicial" capacity, given how courts have defined what it means for an act to be "judicial" in character.  *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (to be "judicial," an act must at least involve "a function normally performed by a judge").  When Congress borrows a legal term of art, we presume that it knows "the meaning its use will convey to the judicial mind unless otherwise instructed."  *Morissette v. United States*, 342 U.S. 246, 263 (1952).

These considerations lead us to conclude that Congress did not intend the FCIA to apply to every official who would receive "judicial" or "quasi-judicial" immunity in an action for damages at common law.  If Congress wanted the Act to cover not just judges and their equivalents but also law enforcement officials like the Sheriff, we think Congress would have spoken in far clearer terms.  Extending immunity from injunctive relief to executive branch officials like the Sheriff would strip federal courts of the authority to enjoin enforcement of any facially unconstitutional state statute that is invoked at the behest of private parties through the courts.  We would not lightly infer an intent to abrogate common law immunity doctrine in that sweeping fashion, particularly in a statute designed simply to overrule *Pulliam v. Allen*.  Doing

so would conflict with the maxim that a statute in derogation of the common law "must be strictly construed, for no statute is to be construed as altering the common law, farther than its words import." *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 304 (1959) (internal quotation marks omitted). We therefore hold that the Sheriff is not entitled to immunity from injunctive relief here.

Our holding does not conflict with the out-of-circuit decisions on which the Sheriff relies. In *Roth v. King*, 449 F.3d 1272 (D.C. Cir. 2006), the D.C. Circuit held that the FCIA barred injunctive relief against two high-level employees of the Public Defender Service for their role in coordinating, along with judges of the District of Columbia Superior Court, the "panel system" that determined which private attorneys were eligible to receive court appointments to represent indigent defendants. *Id.* at 1287. Finding "no reason to believe that [the FCIA] is restricted to 'judges'" and that the Public Defender Service's role was "related to the judicial process," the court held that the Service's officers were immune. *Id.*

Like the D.C. Circuit, we do not hold that the FCIA covers only those officials who bear the title "judge." Nor do we understand the D.C. Circuit to have taken the view at the opposite extreme—that the FCIA covers anyone who would have been entitled to judicial or quasi-judicial immunity in an action for damages at common law. The Public Defender Service defendants in *Roth* were not law enforcement officials like the Sheriff. Instead, they were helping to make discretionary decisions on the suitability of attorneys for court appointments that otherwise would have been made by the judges alone. In that respect, they were exercising the same kind of "discretionary judgment" as the judges

themselves, and their acts could fairly be characterized as having been taken in a "judicial" capacity. *Antoine*, 508 U.S. at 436; *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (FCIA applies to a parole board official serving a "quasi-adjudicative function" in granting or denying parole).

The Sixth Circuit's decision in *Gilbert v. Ferry*, 401 F.3d 411 (6th Cir. 2005), is also distinguishable. There, litigants sued four justices of the Michigan Supreme Court to obtain an injunction requiring them to recuse themselves in two pending cases. The plaintiffs also named as a defendant the court administrator responsible for scheduling the court's calendar. *Id.* at 413 n.1. As the Sixth Circuit pointed out, the court administrator had "no power to remove and re-assign cases, but rather works solely under the supervision and direction of the Michigan Supreme Court." *Id.* He was, in other words, an officer of the judicial branch who wielded only the justices' delegated authority. The Sheriff is not comparably situated. As we have noted, he is an executive branch officer. He does not work for the King County Superior Court, and when executing writs of restitution he is not performing court administrative functions delegated to him by the judges. His authority to execute writs of restitution is derived from power conferred on him by the legislature. *See* Wash. Rev. Code § 59.18.390.

We conclude that the FCIA does not limit injunctive relief against an executive branch officer enforcing a court order, and that the Sheriff is not entitled to immunity from plaintiffs' request for declaratory and injunctive relief. We have considered the Sheriff's remaining arguments and find them to be without merit.

**REVERSED and REMANDED.**